THE STATE OF OHIO, APPELLEE, *v.* WHITE, APPELLANT.

[Cite as *State v. White,* 132 Ohio St.3d 344, 2012-Ohio-2583.]

*Criminal law—Aggravated murder—Death penalty—Resentencing of capital defendant after death sentence has been set aside—R.C. 2929.06(B)— Death penalty may be reimposed after penalty hearing with new jury— Retroactivity—General Assembly intended R.C. 2929.06(B) to be applied retroactively—Retroactive application does not offend Ohio Constitution, Article II, Section 28—R.C. 2929.06(B) applies to resentencing in all capital cases where death penalty has been set aside due to legal error regardless of point at which error occurred.*

(No. 2009-1661—Submitted November 16, 2011—Decided June 14, 2012.)

APPEAL from the Court of Appeals for Ashland County, Nos. 07COA-037 and 07COA-038, 2009-Ohio-3869.

_____

SYLLABUS OF THE COURT

1. R.C. 2929.06(B) applies where an aggravated-murder conviction with a death specification has been affirmed, but the death sentence has been set aside for legal error, when the error infects and thus invalidates the sentencing phase of the trial. In such a case, R.C. 2929.06(B) permits empanelment of a new jury to resentence the offender.

2. The General Assembly has clearly expressed its intent that R.C. 2929.06(B) apply retroactively. (R.C. 2929.06(E), applied.)

3. R.C. 2929.06(B) is remedial, not substantive. Hence, the Retroactivity Clause of the Ohio Constitution does not bar its retroactive application in cases where the aggravated murder was committed before its enactment, but the death sentence was set aside after its enactment.

_____

**LUNDBERG STRATTON, J.**

{¶ 1} Appellant, Maxwell D. White Jr., murdered State Trooper James Gross on January 19, 1996. He was tried by a jury, convicted of aggravated murder with capital specifications, and sentenced to death. On appeal, we affirmed White's conviction and death sentence. *State v. White*, 82 Ohio St.3d 16, 693 N.E.2d 772 (1998). However, on December 7, 2005, White obtained federal habeas corpus relief from his death sentence, obliging the trial court to resentence him. *White v. Mitchell,* 431 F.3d 517 (6th Cir.2005).

{¶ 2} R.C. 2929.06(B) requires the trial court, when resentencing a capital offender who was tried by a jury and whose death sentence has been set aside, to empanel a new jury and conduct a fresh penalty hearing, at which death may be a penalty to be considered by the jury. This provision was enacted after White killed Trooper Gross, but before the federal court invalidated his death sentence.

{¶ 3} The trial court held that it could not retroactively apply R.C. 2929.06(B) in resentencing White, and therefore, White was ineligible for a death sentence. The issue before us is whether the trial court should apply R.C. 2929.06(B) on resentencing, thereby allowing the death penalty to once again be available on remand.

{¶ 4} Because this appeal principally involves White's claim that R.C. 2929.06(B) may not be applied retroactively, we begin by outlining the history of that statute.

{¶ 5} In *State v. Penix*, 32 Ohio St.3d 369, 513 N.E.2d 744 (1987), we held that a death sentence may be imposed only with the recommendation of "the trial jury," because R.C. 2929.03, as written, required it. *Id.* at 372. We further held that "the trial jury" must be the same jury that convicted the offender in the guilt phase. *Id.* at 373. Under *Penix*, when a death sentence imposed by a jury is

vacated for penalty-phase error, the trial court on remand may not empanel a new jury to impose a new death sentence, but must impose one of the life sentences provided by statute. *Id.* at 372-373. On January 19, 1996, the date of the murder in this case, *Penix* was still good law.

{¶ 6} Later in 1996, the 121st General Assembly enacted legislation to abrogate *Penix*. Effective October 16, 1996, R.C. 2929.06 was amended by the adoption of R.C. 2929.06(B).[1] *See* Sub.S.B. No. 258, 146 Ohio Laws, Part VI, 10539, 10548-10549. R.C. 2929.06(B), in its current form,[2] provides that when a death sentence is set aside

> because of error that occurred in the sentencing phase of the trial
> * * *, the trial court that sentenced the offender shall conduct a
> new hearing to resentence the offender. If the offender was tried
> by a jury, the trial court shall impanel a new jury for the hearing.
> * * * At the hearing, the court * * * shall follow the procedure set
> forth in [R.C. 2929.03(D)] in determining whether to impose upon
> the offender a sentence of death * * *.

The 1996 amendment to R.C. 2929.06(B) thus established that a defendant may be resentenced to death on remand from a decision vacating his original death sentence.

{¶ 7} On September 22, 2004, we decided *State v. Williams*, 103 Ohio St.3d 112, 2004-Ohio-4747, 814 N.E.2d 818. In *Williams*, we held that R.C. 2929.06(B) could not be applied to a case involving an aggravated murder

---

1. When enacted, R.C. 2929.06(B) was designated R.C. 2929.06(A)(2). It was given its current designation in 1998. *See* Sub.S.B. No. 107, 147 Ohio Laws, Part IV, 7435, 7438.

2. R.C. 2929.06(B) and (E) were further amended by 2007 Am.Sub.S.B. No. 10. However, the 2007 amendments do not affect the issues presented in this case.

committed before October 16, 1996, because the General Assembly had not expressly made R.C. 2929.06(B) retroactive. *Id.* at syllabus.

{¶ 8} The 125th General Assembly responded to *Williams* by further amending R.C. 2929.06. The amendment, effective March 23, 2005, added a new division, R.C. 2929.06(E). *See* Sub.H.B. No. 184, 150 Ohio Laws, Part III, 5043, 5051. R.C. 2929.06(E) provides:

This section, as amended by H.B. 184 of the 125th general assembly, shall apply to all offenders who have been sentenced to death for an aggravated murder that was committed on or after October 19, 1981 * * * . This section, as amended by H.B. 184 of the 125th general assembly, shall apply equally to all such offenders sentenced to death prior to, on, or after March 23, 2005 [the effective date of H.B. 184], including offenders who, on March 23, 2005, are challenging their sentence of death and offenders whose sentence of death has been set aside, nullified, or vacated by any court of this state or any federal court but who, as of March 23, 2005, have not yet been resentenced.

{¶ 9} While these statutory changes were being enacted, White was pursuing a federal habeas corpus challenge to his conviction and death sentence. On December 7, 2005, the United States Court of Appeals for the Sixth Circuit affirmed the federal district court's denial of habeas relief as to White's conviction. *White v. Mitchell,* 431 F.3d 517. However, the Sixth Circuit held that White's death sentence was constitutionally defective.

{¶ 10} At trial, White had challenged a prospective juror on the ground that she was biased in favor of a death sentence. The trial court overruled White's challenge, and the juror took part in White's trial and sentencing. The Sixth

Circuit found that the juror was biased and that the trial court had therefore erred by overruling White's challenge. *Id.* at 537-543. Accordingly, the Sixth Circuit ordered that White's death sentence be vacated "unless the State conducts a new penalty phase proceeding." *Id.* at 543.

{¶ 11} On December 28, 2006, pursuant to the Sixth Circuit's mandate, the federal district court granted a conditional writ of habeas corpus and ordered that the state either conduct a new penalty hearing or vacate White's death sentence. On December 29, 2006, the state filed a motion in the trial court requesting a new penalty-phase proceeding in light of the federal court's order.

{¶ 12} White filed two motions in the trial court to prohibit the state from seeking the death penalty. These were designated "Motion A" and "Motion B." In Motion A, White argued that R.C. 2929.06(B) does not apply to a case where a death sentence has been set aside for error that took place during voir dire, such as the erroneous overruling of a challenge for cause. In Motion B, he argued that R.C. 2929.06(B) cannot constitutionally be applied to a case involving a crime committed before its enactment.

{¶ 13} The trial court granted Motion B in part, holding that the application of R.C. 2929.06(B) to White's case would be unconstitutionally retroactive in violation of the Ohio Constitution, Article II, Section 28, the Retroactivity Clause, which provides: "The general assembly shall have no power to pass retroactive laws * * *." Motion B also included a claim that application of R.C. 2929.06(B) would violate the Ex Post Facto Clause of the United States Constitution. The trial court did not address White's ex post facto claim. Nor did the court address Motion A.

{¶ 14} The court of appeals reversed and remanded, holding that applying R.C. 2929.06(B) to White would not violate the Retroactivity Clause. *State v. White*, 5th Dist. Nos. 07-COA-037 and 07-COA-038, 2009-Ohio-3869.

{¶ 15} We granted White's jurisdictional motion. *State v. White*, 123 Ohio St.3d 1508, 2009-Ohio-6210, 917 N.E.2d 811. We now affirm the judgment of the court of appeals.

I. Applicability of R.C. 2929.06(B)

{¶ 16} As a threshold question, we must determine whether R.C. 2929.06(B) is applicable to White's case. White contends that R.C. 2929.06(B), even if applied retroactively, does not authorize the trial court to empanel a new jury for resentencing under the circumstances of this case.

{¶ 17} R.C. 2929.06(B) provides:

Whenever any court of this state or any federal court sets aside, nullifies, or vacates a sentence of death imposed upon an offender because of error that occurred in the sentencing phase of the trial * * *, the trial court that sentenced the offender shall conduct a new hearing to resentence the offender. If the offender was tried by a jury, the trial court shall impanel a new jury for the hearing. * * * At the hearing, the court * * * shall follow the procedure set forth in [R.C. 2929.03(D)] in determining whether to impose upon the offender a sentence of death * * *.

{¶ 18} White contends that R.C. 2929.06(B) is inapplicable to his case because his death sentence was not vacated "because of error that occurred in the sentencing phase of the trial." White's sentence was vacated because the trial court erroneously overruled a challenge for cause during jury selection. According to White, since the fatal error occurred during jury selection, it did not occur "in the sentencing phase."

{¶ 19} We note that one common pleas court has agreed with White's reading of R.C. 2929.06(B), holding that an error occurring during voir dire

"could not have occurred during the sentencing phase." *State v. Jackson*, Allen C.P. No. CR-2002-0011 (Nov. 21, 2006), slip op. at 4, on remand from *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173.

{¶ 20} However, it is relevant to note that voir dire is not a substantive part of trial; rather, it is a mechanism to seat an impartial jury so that the due process rights of a defendant are protected. *Morgan v. Illinois*, 504 U.S. 719, 729-730, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992) (explaining that the Constitution does not provide for voir dire, but only that the defendant be afforded an impartial jury; voir dire plays a critical function in assuring the criminal defendant that his constitutional right to an impartial jury will be honored). But an error in the jury-selection process that is not relevant to a guilt determination may become relevant at the time of sentencing, as in this case, in which the only bias issue concerned the juror's views on the death penalty. Thus, we must interpret what "in the sentencing phase" means as used in R.C. 2929.06(B). While we must be mindful that, although criminal statutes are strictly construed against the state, R.C. 2901.04(A), they should not be given an artificially narrow interpretation that would defeat the apparent legislative intent. *In re Clemons*, 168 Ohio St. 83, 87-88, 151 N.E.2d 553 (1958).

{¶ 21} It is evident that the intent of R.C. 2929.06(B) was to abrogate *Penix* and to make all capital offenders whose death sentences are set aside eligible for a death sentence on resentencing. The statutory language at issue was taken, with only minor alteration, directly from *Penix*. *Penix* states:

> [W]hen a case is remanded to the trial court following vacation of the death sentence *due to error occurring at the penalty phase of the proceeding*, the trial court, in resentencing the offender, is limited to the sentences of life imprisonment with parole eligibility after serving twenty full years of imprisonment or life

imprisonment with parole eligibility after serving thirty full years of imprisonment.

(Emphasis added.)  32 Ohio St.3d 369, 513 N.E.2d 744, syllabus.

{¶ 22} R.C. 2929.06(B) was intended to abrogate *Penix*.  The statutory language was taken (with minor changes) directly from *Penix*.  We may therefore infer that the statutory language is intended to mean whatever the similar language in *Penix* meant.  The language in *Penix*, "error occurring at the penalty phase of the proceeding," does not mean only "error occurring during the penalty phase" but includes all errors that cause the death penalty to be set aside without affecting the guilt-phase verdict.  *See State v. Scott,* 8th Dist. No. 53120, 1988 WL 132574, *5-8, *24 (Dec. 9, 1988) (where guilt-phase error was harmless as to conviction but fatal to death sentence, defendant was to be resentenced under *Penix*).  Therefore, the language of R.C. 2929.06(B) has that meaning also.

{¶ 23} White's proposed reading of the statute would create an odd dichotomy between sentencing-phase errors that invalidate a death sentence without affecting the conviction and errors having precisely the same effect but that happen to occur at some other point during the proceedings.  Errors of the first type would be covered by R.C. 2929.06(B), so that a new jury could be empaneled for resentencing, and the defendant could receive a death sentence on remand.  Errors of the second type would not be covered by R.C. 2929.06(B) and would entitle the defendant to avoid a death sentence.

{¶ 24} Such a distinction would be completely arbitrary.  White suggests no reason why the General Assembly would want to treat resentenced capital offenders differently based on *when* the error that invalidated the death sentence occurred.

{¶ 25} Accordingly, we reject White's proposed interpretation of R.C. 2929.06(B) and hold that R.C. 2929.06(B) applies where an aggravated-murder

conviction with a death specification has been affirmed, but the death sentence has been set aside for legal error, when the error infects and thus invalidates the sentencing phase of the trial. In such a case, R.C. 2929.06(B) permits empanelment of a new jury to resentence the offender.

## II. Retroactive Application of R.C. 2929.06(B)

{¶ 26} The principal issue in this case is whether the application of R.C. 2929.06(B) to White on remand would violate the Retroactivity Clause of the Ohio Constitution.

{¶ 27} Determining whether a statute's retroactive application violates the Retroactivity Clause requires a two-step analysis. First, we must determine whether the General Assembly intended that the statute apply retroactively. If not, the statute may not be so applied. *See* R.C. 1.48. If the General Assembly has expressly indicated its intention that the statute apply retroactively, we must determine whether the statute is remedial, in which case retroactive application is permitted, or substantive, in which case retroactive application is forbidden. *See State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 10, 15; *Bielat v. Bielat*, 87 Ohio St.3d 350, 353, 721 N.E.2d 28 (2000); *State v. Cook*, 83 Ohio St.3d 404, 410-411, 700 N.E.2d 570 (1998); *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 522 N.E.2d 489 (1988), paragraphs one and two of the syllabus.

## A. Intent of the General Assembly

{¶ 28} In this case, the result of the first step is obvious. The trial court determined that R.C. 2929.06(E) expressly indicates the intention of the General Assembly that R.C. 2929.06(B) apply retroactively. Both parties agree with the trial court's conclusion. So do we.

{¶ 29} R.C. 2929.06(E) provides that R.C. 2929.06, as amended, "shall apply to *all* offenders who have been sentenced to death for an aggravated murder that was committed *on or after October 19, 1981*." (Emphasis added.) October

19, 1981, is the effective date of Ohio's current death-penalty statute, 139 Ohio Laws, Part I, 1, 18-19, so all prisoners now on death row in Ohio were sentenced to death for an aggravated murder committed on or after that date.  Thus, R.C. 2929.06(E) expressly makes R.C. 2929.06—including R.C. 2929.06(B)—apply to all offenders sentenced under Ohio's death-penalty statutes.

{¶ 30} To ensure that the legislative intent is clear, R.C. 2929.06(E) further provides that R.C. 2929.06,

> as amended by H.B. 184 * * *, shall apply *equally* to *all* such offenders sentenced to death *prior to, on, or after March 23, 2005, including* offenders who, on March 23, 2005, are challenging their sentence of death and *offenders whose sentence of death has been set aside, nullified, or vacated by any court of this state or any federal court* but who, as of March 23, 2005, have not yet been resentenced.

(Emphasis added.)   By enacting R.C. 2929.06(E), the General Assembly has clearly expressed its intent that R.C. 2929.06(B) apply retroactively.

### B. Is R.C. 2929.06(B) Remedial or Substantive?

{¶ 31} In construing the Retroactivity Clause, we have determined that "retroactivity itself is not always forbidden by Ohio law." *Bielat*, 87 Ohio St.3d at 353, 721 N.E.2d 28.   Thus, having determined that R.C. 2929.06(B) was intended to apply retroactively, we proceed to the second step of retroactivity analysis: determining whether the statute is remedial or substantive.

### 1. Does R.C. 2929.06(B) Increase the Punishment for the Offense?

{¶ 32} If a statute's intent is punitive in nature, it cannot be considered merely remedial.  *See Cook,* 83 Ohio St.3d at 418, 700 N.E.2d 570.  Thus, Ohio retroactivity analysis prohibits a retroactive increase in punishment for a criminal

10

offense. *See State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, ¶ 39. White contends that applying R.C. 2929.06(B) retroactively to his case violates the Retroactivity Clause because it would increase the punishment he faces for murdering Trooper Gross.

{¶ 33} We disagree. R.C. 2929.06(B) does not increase the punishment for aggravated murder. The death penalty for aggravated murder existed on January 19, 1996, the date of Trooper Gross's murder. White plainly faces no greater punishment as a result of R.C. 2929.06(B) than he faced on January 19, 1996.

2. Did White Have a Vested or Accrued Right
to Be Resentenced Without a Jury?

{¶ 34} "The prohibition against retroactive laws * * * is a protection for the individual who is assured that he may rely upon the law as it is written and not later be subject to new obligations thereby." *Lakengren, Inc. v. Kosydar*, 44 Ohio St.2d 199, 201, 339 N.E.2d 814 (1975). Thus, "the constitutional test for substantive legislation focuses on new laws that reach back in time and create new burdens, deprivations, or impairments of vested rights." *Bielat*, 87 Ohio St.3d at 359, 721 N.E.2d 28.

> [A] statute is substantive when it * * * impairs or takes away vested rights; affects an accrued substantive right; imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction; creates a new right out of an act [that] gave no right and imposed no obligation when it occurred; creates a new right; [or] gives rise to or takes away the right to sue or defend actions at law.

(Citations omitted.) *Van Fossen*, 36 Ohio St.3d at 107, 522 N.E.2d 489.

**{¶ 35}** An "accrued right" is "a matured right; a right that is ripe for enforcement." Garner, *Black's Law Dictionary* 1436 (9th Ed.2009). "A right, not absolute but dependent for its existence upon the action or inaction of another, is not basic or vested * * *." *Hatch v. Tipton*, 131 Ohio St. 364, 2 N.E.2d 875 (1936), paragraph two of the syllabus.

**{¶ 36}** On January 19, 1996, the day he murdered Trooper Gross, White did not have an "absolute" or "matured" right to be resentenced under *Penix.* That right could not come into existence until several intervening events took place. First, White would have to be convicted of aggravated murder with at least one death specification; then, after the penalty phase, the jury would have to recommend a death sentence, and the trial judge would have to impose one; then upon appellate review the death sentence would have to be vacated. Only if all these conditions came to pass could the question of resentencing arise. Only then could White's right to be resentenced in accordance with *Penix* come into existence.

**{¶ 37}** Ultimately, each of these preconditions for resentencing did come to pass. But the last of them did not occur until December 7, 2005, the date when the Sixth Circuit invalidated White's death sentence. Before that date, White had no vested or accrued right to be resentenced under *Penix.* But before December 7, 2005, the General Assembly had not only enacted R.C. 2929.06(B), but had enacted R.C. 2929.06(E), which made R.C. 2929.06 retroactive to October 19, 1981. Thus, upon the enactment of R.C. 2929.06(B), the *Penix* right was extinguished. When the Sixth Circuit vacated White's death penalty, there was no *Penix* right to vest. For the same reason, White could not plausibly contend that he relied on *Penix* when he committed the murder. We conclude that retroactive application of R.C. 2929.06(B) does not impair any vested or accrued right belonging to White.

3. Would Retroactive Application of R.C. 2929.06(B) Create a New

Right for the State While Imposing a New Burden on White?

**{¶ 38}** The trial court rejected the state's argument that "the law is not substantive because the Defendant did not have a 'vested right' to be resentenced to a life sentence * * *." The court stated: "There need not be a deprivation of a vested right in order for the law to be deemed a substantive retroactive law. It is sufficient that the law creates a new right and imposes corresponding burdens."

**{¶ 39}** The trial court concluded that R.C. 2929.06(B) was substantive because it both created a new right and imposed a corresponding burden on White. The court identified the new right created by the statute as the state's right "to empanel a new jury for death penalty resentencing." The burden imposed on White was "the burden to defend a second death penalty proceeding where no such obligation existed under the prior law."

**{¶ 40}** The trial court's statement that "[i]t is sufficient that the law creates a new right and imposes corresponding burdens" is incomplete. We have held that, to be deemed substantive, a law must impose a *new* burden on the complaining party. "[T]he constitutional test for substantive legislation focuses on new laws that reach back in time and create new burdens, deprivations, or impairments of vested rights." *Bielat*, 87 Ohio St.3d at 359, 721 N.E.2d 28. The Retroactivity Clause prohibits the General Assembly from "passing new laws to reach back and create new burdens, new duties, new obligations, or new liabilities not existing at the time." *Miller v. Hixson*, 64 Ohio St. 39, 51, 59 N.E. 749 (1901).

**{¶ 41}** The burden identified by the trial court was "the burden to defend a second death penalty proceeding where no such obligation existed under the prior law." But that was no new burden. The burden of defending a death-penalty proceeding was the same burden to which White was liable on January 19, 1996, after the murder of Trooper Gross. As the court of appeals aptly observed:

"Appellee always had a right to have the death penalty determined by a jury and always had the obligation to defend against it." 2009-Ohio-3869, ¶ 22.

**{¶ 42}** Moreover, "a later enactment will not burden or attach a new disability to a past transaction or consideration in the constitutional sense, unless the past transaction or consideration, if it did not create a vested right, created at least a reasonable expectation of finality." *State ex rel. Matz v. Brown*, 37 Ohio St.3d 279, 281, 525 N.E.2d 805 (1988).

**{¶ 43}** In this case, White can point to no event preceding the enactment of R.C. 2929.06(B) and (E) that entitled him to a reasonable expectation of finality. White asks us to apply the law as it existed on the date he murdered Trooper Gross. But in *Matz*, we held that "the commission of a felony" is not a transaction that creates a reasonable expectation of finality. "Except with regard to constitutional protections against *ex post facto* laws * * *, felons have no reasonable right to expect that their conduct will never thereafter be made the subject of legislation." *Id*. at 281-282.

**{¶ 44}** Because White could have no reasonable expectation of finality with respect to *Penix* on the date of the murder, retroactive application of R.C. 2929.06(B) to White's resentencing does not create a new burden "in the constitutional sense." *Matz* at 281.

4. Is a Statute Creating a New Jury-Trial Right<br>Necessarily Substantive?

**{¶ 45}** R.C. 2929.06(B) requires the trial court, when resentencing a capital offender who was tried by a jury and whose death sentence has been set aside, to empanel a new jury on resentencing if the offender was originally tried by a jury. In its opinion, the trial court noted that the right to a jury trial was described as "substantive, not procedural" in *Kneisley v. Lattimer-Stevens Co*., 40 Ohio St.3d 354, 356, 533 N.E.2d 743 (1988), citing *Cleveland Ry. Co. v. Halliday*, 127 Ohio St. 278, 188 N.E. 1 (1933), paragraph one of the syllabus.

**{¶ 46}** But the creation of a new right—even a new substantive right—is not, by itself, enough to support a claim of unconstitutional retroactivity. We have held that a claim that a statute is substantive, and hence unconstitutionally retroactive, "cannot be based solely upon evidence that a statute retrospectively created a new right, but must also include a showing of some impairment, burden, deprivation, or new obligation accompanying that new right." *Bielat*, 87 Ohio St.3d 350, 721 N.E.2d 28, paragraph two of the syllabus. The court must inquire "whether the creation of rights in one party reciprocally impaired a right of the party challenging the retroactive law. In other words, substantive, retroactive legislation that unconstitutionally creates a new right also impairs a vested right or creates some new obligation or burden as well." *Id*. at 359. This is true even if the new right itself may be characterized as substantive.

**{¶ 47}** *Kneisley* is not to the contrary. In *Kneisley*, we held that legislation *eliminating* a party's accrued right to a jury trial was substantive and could not be retroactively applied. 40 Ohio St.3d at 356-357, 533 N.E.2d 743. *Kneisley* does not stand for the proposition that legislation *granting* a right to a jury trial is substantive, where such legislation does not impose a new burden on the other party. Since the creation of a jury-trial right on remand does not impose any new burden on White—i.e., any burden that he did not face on January 19, 1996—the substantive nature of the jury-trial right does not itself preclude retroactive application of R.C. 2929.06(B).

**{¶ 48}** To sum up, the application of R.C. 2929.06(B) to White's resentencing would not increase White's potential sentence, impair any of White's vested or accrued rights, violate any reliance interest or any reasonable expectation of finality, or impose any new burdens on him. We therefore hold that R.C. 2929.06(B) is remedial, not substantive. Hence, the Retroactivity Clause of the Ohio Constitution does not bar its retroactive application in cases

where the aggravated murder was committed before its enactment, but the death sentence was set aside after its enactment.

### III. The Ex Post Facto Clause

{¶ 49} Although White's brief is not completely clear on this point, he appears to be raising a claim under the Ex Post Facto Clause of the United States Constitution. Moreover, amicus curiae American Civil Liberties Union of Ohio Foundation ("ACLU") expressly contends that applying R.C. 2929.06(B) to White's case on remand would violate the Ex Post Facto Clause. We will therefore consider this issue.

{¶ 50} In *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798), Justice Chase identified the four kinds of laws that come within the Ex Post Facto Clause:

> 1st. Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action. 2d. Every law that *aggravates* a *crime*, or makes it *greater* than it was, when committed. 3d. Every law that *changes the punishment*, and inflicts a *greater punishment*, than the law annexed to the crime, when committed. 4th. Every law that alters the *legal* rules of *evidence*, and receives less, or different, testimony, than the law required at the time of the commission of the offence, *in order to convict the offender*.

(Emphasis sic.) The United States Supreme Court has adopted Justice Chase's *Calder* opinion as an authoritative definition of ex post facto laws. *See, e.g., Stogner v. California*, 539 U.S. 607, 611, 123 S.Ct. 2446, 156 L.Ed.2d 544 (2003); *Carmell v. Texas*, 529 U.S. 513, 525, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000).

16

**{¶ 51}** White contends that R.C. 2929.06(B) increases the punishment for aggravated murder, which would bring it within the third *Calder* category. However, R.C. 2929.06(B) does not increase the punishment for aggravated murder. "[T]he focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' * * * but on whether any such change * * * increases the penalty by which a crime is punishable." *California Dept. of Corrections v. Morales*, 514 U.S. 499, 506, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995), fn. 3.

**{¶ 52}** The death penalty existed for aggravated murder on January 19, 1996, the date of Trooper Gross's murder. "[I]ts existence on the statute books provided fair warning as to the degree of culpability which the State ascribed to the act of murder." *Dobbert v. Florida*, 432 U.S. 282, 297, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). "This was sufficient compliance with the ex post facto provision of the United States Constitution." *Id*. at 298.

**{¶ 53}** In *Evans v. Commonwealth*, 228 Va. 468, 323 S.E.2d 114 (1984), the Virginia Supreme Court faced a question almost identical to that presented here. That court had previously held (as we would later hold in *Penix*) that the relevant Virginia statute, as written, required that where a death sentence was invalidated, the defendant must be resentenced to life imprisonment, because only the jury that had convicted the offender could sentence him to death. *See also Patterson v. Commonwealth*, 222 Va. 653, 660, 283 S.E.2d 212 (1981).

**{¶ 54}** Virginia's legislature subsequently amended the statute to permit a new jury to fix a penalty on remand. The defendant in *Evans* (like White) had committed his crime before the amendment's adoption, but his death sentence was vacated after its adoption. On resentencing, the trial court empanelled a new jury under the amended statute, and Evans was sentenced to death. On appeal, he claimed that application of the amended statute to him violated the Ex Post Facto Clause. *Id.* at 475.

**{¶ 55}**  The Virginia Supreme Court rejected Evans's ex post facto argument.

> Pertinent to the *ex post facto* inquiry is whether the defendant had "fair warning as to the degree of culpability which the State ascribed to the act of murder." [*Dobbert,* 432 U.S. at 297, 97 S.Ct. 2290, 53 L.Ed.2d 344.]  Manifestly, Evans had "fair notice" and "fair warning" at the time of his 1981 offense that the capital murder of a law-enforcement officer was a crime for which the death penalty could be imposed.

*Evans*, 228 Va. at 476, 323 S.E.2d 114.

**{¶ 56}** The court rejected Evans's argument that "a full 'fair warning' inquiry must take into account that Evans was also deemed to understand that if he were to receive a death sentence and if his death sentence were to be set aside, his punishment would be life imprisonment." *Id.*  The court explained that "the *ex post facto* inquiry focuses on 'the quantum of punishment attached to the crime' [*Dobbert* at 294], of which the defendant had notice at the time of the offense, and not on adjustments in the method of administering that punishment that are collateral to the penalty itself." *Evans* at 476-477.

**{¶ 57}** The United States Court of Appeals for the Fourth Circuit, considering Evans's case on habeas corpus review, reached the same conclusion in *Evans v. Thompson*, 881 F.2d 117, 119-121 (4th Cir.1989).  The amended statute "neither increased the punishment attached to [the] crime," nor deprived the defendant of "a defense available to him when he committed murder." *Id.* at 120.  It merely changed "the procedures surrounding the imposition of the death penalty." *Id.*  Hence, the state could apply the amended statute on remand without violating the Ex Post Facto Clause.

**{¶ 58}** The second *Calder* category consists of "[e]very law that *aggravates* a *crime*, or makes it *greater* than it was, when committed." (Emphasis sic.) *Id.,* 3 U.S. at 390, 1 L.Ed. 648. The United States Supreme Court has explained that the second category applies "where a new law inflicts a punishment upon a person not *then* subject to that punishment, to any degree." (Emphasis sic.) *Stogner v. California*, 539 U.S. at 613-614, 123 S.Ct. 2446, 156 L.Ed.2d 544.

**{¶ 59}** *Stogner* involved a statute extending the period of limitations for prosecution of sex crimes involving children. The state sought to apply the extended limitations period to a case in which the former limitations period had expired before the extension was enacted. *Stogner* held that the extended statute of limitations fell within the second *Calder* category, because the extension "retroactively withdraws a complete defense to prosecution *after it has already attached*, and it does so in a manner that allows the State to withdraw this defense at will and with respect to individuals already identified." (Emphasis added.) *Stogner* at 632. The extension "subjects an individual * * * to prosecution long after the State has, in effect, granted an amnesty." *Id*.

**{¶ 60}** Under *Penix*, a capital defendant whose death sentence was vacated on appeal had what amounted to a complete defense to the death penalty on remand, since the *Penix* rule precluded a death sentence on remand. 32 Ohio St.3d 369, 513 N.E.2d 744. R.C. 2929.06(B) eliminates that defense.

**{¶ 61}** But, unlike the statute in *Stogner*, the retroactive application of R.C. 2929.06(B) to White's case would not withdraw a defense to the death penalty *after that defense has attached*. White's sentence was not set aside until *after* R.C. 2929.06(B) took effect. Thus, no *Penix* defense to the death penalty had attached by the time R.C. 2929.06(B) became law.

**{¶ 62}** *Stogner* noted that "courts have upheld extensions of *unexpired* statutes of limitations" and stated that "our holding today does not affect" such extensions. (Emphasis sic.) 539 U.S. at 618, 123 S.Ct. 2446, 156 L.Ed.2d 544;

*see also id*. at 632 (the state is not prevented "from extending time limits * * * for prosecutions not yet time barred"). Applying R.C. 2929.06(B) to a defendant whose case was remanded for resentencing after that provision became law is analogous to extending an unexpired statute of limitations.

{¶ 63} Finally, R.C. 2929.06(B) does not fall within the remaining *Calder* categories. It neither retroactively criminalizes an innocent action, nor alters the rules of evidence to the state's advantage, permitting conviction (or imposition of the death penalty) on "less, or different, testimony, than the law required at the time of the commission of the offence." *Calder,* 3 U.S. at 390, 1 L.Ed. 648.

{¶ 64} We hold that R.C. 2929.06(B) does not fall within any of the four categories of ex post facto laws identified in *Calder*. Hence, its application in this case does not violate the Ex Post Facto Clause.

## IV. Double Jeopardy

{¶ 65} Amicus curiae Ohio Academy of Criminal Defense Lawyers ("OACDL") contends that retroactive application of R.C. 2929.06(B) would violate the Double Jeopardy Clause. OACDL argues: "In effect, former [R.C. 2929.06] created an irrebuttable presumption that the first jury, in the absence of the biased juror, would not have recommended death and therefore a life sentence must be imposed. This is the equivalent of an acquittal of the death penalty that precludes reinstatement of that punishment."

{¶ 66} OACDL's double-jeopardy argument rests on a misunderstanding of *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), and its progeny. In *Bullington*, the United States Supreme Court applied double-jeopardy principles to capital sentencing. *Bullington* held that in a case where the jury had recommended a life sentence in the second stage of a bifurcated trial, the resulting life sentence imposed by the jury in that case deserved the same finality as an acquittal of the offense, because that recommendation "meant that 'the jury has already acquitted the defendant of whatever was necessary to impose the

death sentence.' " *Id.* at 445, quoting *State ex rel. Westfall v. Mason*, 594 S.W.2d 908, 922 (Mo.1980) (Bardgett, C.J., dissenting).

**{¶ 67}** Cases decided since *Bullington* make clear that "an 'acquittal' at a trial-like sentencing phase * * * is required to give rise to double-jeopardy protections." *Sattazahn v. Pennsylvania*, 537 U.S. 101, 107, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003). Moreover, to raise a double-jeopardy bar to resentencing, an acquittal *on the merits* is required. *See Arizona v. Rumsey*, 467 U.S. 203, 211, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984); *Sattazahn* at 107-108. "Only a finding that the state has failed to prove its case for death constitutes an 'acquittal of the death penalty' for double-jeopardy purposes." *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 150.

**{¶ 68}** Thus, a jury's verdict imposing a life sentence is an on-the-merits acquittal of the death penalty. *Bullington* at 444-445. Similarly, where state law requires a finding of an aggravating circumstance as a prerequisite to a death sentence, a jury's refusal to make such a finding is an on-the-merits acquittal of the death penalty. *Rumsey* at 211-212. But a life sentence imposed by a judge solely because the jury has deadlocked, and thus failed to make any findings at all, is not an acquittal of the death sentence for double-jeopardy purposes. *Sattazahn* at 109-110.

**{¶ 69}** Similarly, we held in *Hancock* that a trial court's refusal to follow a jury's death recommendation was not an acquittal of the death sentence because it was based, not on the trial judge's weighing of aggravating circumstances and mitigating factors, but on the judge's ruling that a procedural error invalidated the jury's recommendation, leaving him without authority to impose a death sentence. *Hancock* at ¶ 144-149.

**{¶ 70}** In this case, as in *Hancock*, "neither judge nor jury ever found that the prosecution had failed to prove its case that [the defendant] deserved the death penalty." *Id.* at ¶ 145. To the contrary, at White's original trial, the jury

recommended a death sentence, and the trial judge imposed it. Thus, both judge and jury found that the state had proven its case that White deserved the death penalty. We therefore reject OACDL's double-jeopardy argument.

{¶ 71} For the foregoing reasons, we affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and O'DONNELL, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER and LANZINGER, JJ., dissent.

_____

**LANZINGER, J., dissenting.**

{¶ 72} I respectfully dissent. I would not reach the constitutional question because the statute does not apply to this case. R.C. 2929.06(B) provides:

Whenever any court of this state or any federal court sets aside, nullifies, or vacates a sentence of death imposed upon an offender *because of error that occurred in the sentencing phase of the trial * * *,* the trial court that sentenced the offender shall conduct a new hearing to resentence the offender. If the offender was tried by a jury, the trial court shall impanel a new jury for the hearing.

(Emphasis added.)

{¶ 73} In this case, error occurred during voir dire, and the sentence of death was not reversed "because of error that occurred in the sentencing phase of the trial." Based on the plain language of the statute as informed by the rule of lenity, R.C. 2929.06(B) does not apply, and there is no need to empanel a new jury for the potential imposition of a new death sentence. I would therefore

reverse the judgment of the court of appeals and reinstate the trial court's order of resentencing pursuant to the law in effect at the time of his offense.

*The Sixth Circuit's Opinion*

**{¶ 74}** The Sixth Circuit Court of Appeals vacated White's sentence of death based on error during the jury-selection phase of the trial because the trial court had not dismissed a juror who was biased. The court found that "juror Sheppard was unable to 'lay aside [her] impression or opinion and render a verdict based on the evidence presented in court.' " (Brackets sic.) *White v. Mitchell*, 431 F.3d 517, 542 (6th Cir.2005), quoting *Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).

**{¶ 75}** No one has disputed that this error occurred during voir dire, a portion of the proceedings that is separate from the "trial phase" and "sentencing phase" of capital case proceedings. *See, e.g., State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596 (separate analysis of voir dire, trial phase, and sentencing phase); *State v. Gumm,* 73 Ohio St.3d 413, 417, 653 N.E.2d 253 (1995) (describing separation of guilt phase from sentencing phase of capital trial); *State v. Biros,* 78 Ohio St.3d 426, 443, 678 N.E.2d 891 (1997) (R.C. 2929.03(B)'s prohibition against informing jurors of potential penalties in capital case applies to guilt phase, not to voir dire).

**{¶ 76}** The voir dire error in White's case did not occur in the sentencing phase.

*The Meaning of the Statute*

**{¶ 77}** We have previously considered the import of the phrase "error that occurred in the sentencing phase of the trial," which appears in R.C. 2929.06 as amended, and we held that the erroneous introduction of excluded evidence into the jury's sentencing deliberations fell within that meaning. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 136. We therefore remanded the case for application of the amended statute based on an exact

reading of its language. Now, however, the majority reads out the limiting phrase of "in the sentencing phase" and holds that R.C. 2929.06(B) permits empanelment of a new jury for resentencing, which may include a possible reimposition of the death sentence, "when the error infects and thus invalidates the sentencing phase of the trial" no matter at what point in the proceedings the error invalidating the sentence took place, i.e., at *any* phase of the trial. Paragraph one of the syllabus of the majority opinion thus flatly contradicts the statute as written.

{¶ 78} The majority acknowledges that *State v. Penix*, 32 Ohio St.3d 369, 513 N.E.2d 744 (1987), limited resentencing to penalties other than death "following vacation of the death sentence *due to error occurring at the penalty phase of the proceeding.*" (Emphasis added.) *Id.* at syllabus. The *Penix* rule was favorable to the accused in that death could not be imposed after a remand. As amended, R.C. 2929.06(B) removes the protection against a death sentence upon remand, requiring the empaneling of a new jury to consider all possible sentences, including, in White's case, death, life imprisonment without parole, life imprisonment with parole eligibility after 20 full years of imprisonment, and life imprisonment with parole eligibility after 30 full years of imprisonment, as these were the penalties available on the date of White's offense.

{¶ 79} The majority would "infer" that the General Assembly intended this statute to apply to all capital offenders whose convictions are upheld but whose death sentences were set aside. Majority opinion at ¶ 22. But it is well accepted in determining legislative intent that a court must first look to the language of the statute itself. *Provident Bank v. Wood*, 36 Ohio St.2d 101, 105, 304 N.E.2d 378 (1973). "If the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary." *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545, 660 N.E.2d 463 (1996). It is also well settled that to determine the intent of the General Assembly, " '[i]t is the duty of this court to give effect to the

24

*words used* [in a statute], not to delete words used *or to insert words not used*.' " (Emphasis sic.) *Bernardini v. Conneaut Area City School Dist. Bd. of Edn.*, 58 Ohio St.2d 1, 4, 387 N.E.2d 1222 (1979), quoting *Columbus-Suburban Coach Lines v. Pub. Util. Comm.*, 20 Ohio St.2d 125, 127, 254 N.E.2d 8 (1969).

{¶ 80} Bearing these principles in mind, it is improper for this court to insert words into a clear statute. R.C. 2929.06(B) applies only when a death sentence is overturned "because of error that occurred in the sentencing phase of the trial." The majority rewrites the statute, broadening its scope based upon an inference regarding the General Assembly's intent. I would hold that "sentencing phase" means "sentencing phase." This straightforward interpretation is not "an artificially narrow interpretation that would defeat the apparent legislative intent," as the majority terms it. Majority opinion at ¶ 20. Instead, it is taking the legislature at its own word.

### *The Rule of Lenity*

{¶ 81} With respect to criminal statutes, there is an additional concern. Even if there were an ambiguity, meaning two reasonable ways of reading the statute, R.C. 2901.04 provides that we must read the language of the relevant statute not in favor of the government, but in favor of the accused. This rule of lenity, as codified, states that "[e]xcept as otherwise provided in division (C) or (D) of this section, sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." R.C. 2901.04(A). In other words, penal statutes may not be extended by implication to cases not falling within their terms. We must be particularly mindful of the rule of lenity in death-penalty cases, for as is commonly acknowledged, death is different.

{¶ 82} We applied this rule in a case in which we were asked to consider whether a juvenile who was charged with aggravated murder and an aggravating-circumstances specification but was ineligible for the death penalty due to age

was entitled to the additional rights afforded to capital defendants. *State v. Harwell*, 102 Ohio St.3d 128, 2004-Ohio-2149, 807 N.E.2d 330. The state relied upon dicta from this court that "R.C. 2901.02(B) was amended effective April 4, 1984 so that only an offense for which death may be imposed as a penalty is a capital offense." *State ex rel. Corrigan v. McMonagle*, 12 Ohio St.3d 15, 16, 465 N.E.2d 382 (1984), fn. 1. We recognized that although the statement may have aptly characterized what the General Assembly intended, it did not characterize what the General Assembly enacted. *Harwell* at ¶ 6. As in all other matters involving R.C. Title 29, our analysis is to be guided by the General Assembly's overriding concern that criminal statutes shall be strictly construed against the state and liberally construed in favor of the accused. *Id.* We held that R.C. 2901.04(B) plainly requires that an indictment charging an aggravating-circumstances specification pursuant to R.C. 2929.04(A) must be regarded as charging a capital offense. *Id.* at ¶ 7-10. We rejected the state's position that the additional protections afforded a capital defendant attach only when there is an actual possibility of a death sentence. To accept this proposition "would turn the legislative imperative of construing R.C. Title 29 strictly against the state and liberally in favor of the accused on its head." *Id*. at ¶10.

{¶ 83} In my view, this is exactly what the majority has done in affirming the judgment of the court of appeals.

{¶ 84} In another case, we vacated one of two death penalties because of a voir dire error and returned the matter to the trial court for resentencing. *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 178. Although we upheld the aggravated-murder conviction and specification in *Jackson*, because the trial court abused its discretion by refusing defense counsel's requests to advise prospective jurors that one of the murdered victims was a three-year-old child and by refusing to allow voir dire on possible bias stemming from that fact,

we remanded the cause for "resentencing consistent with R.C. 2929.06." *Id.* at ¶ 62.

{¶ 85} Upon remand, the trial court concluded that amended R.C. 2929.06 did not authorize the empaneling of a new jury to consider reimposition of a death sentence because the error had not occurred at the sentencing phase of the trial:

> Certainly, paragraph (B) does not clearly apply. Paragraph (B) applies when a sentence of death is set aside, nullified, or vacated "because of error that occurred in the sentencing phase of the trial and if division (A) of this section does not apply." If the error occurred during voir dire, which was *before* the sentencing phase, the error could not have occurred during the sentencing phase.

(Emphasis sic.) *State v. Jackson*, Allen C.P. No. CR-2002-0011, at 4 (Nov. 21, 2006).

{¶ 86} The trial court concluded that

> under R.C. 2929.06(A), a resentencing hearing is necessary wherein the Court shall impose upon the offender one of the sentences of life imprisonment that are available under division (D) of section 2929.03 * * * at the time the offender committed the offense for which the sentence of death was imposed.

*Id.* at 6. I believe that the trial court in *Jackson* correctly read the statute as it was written.

### Conclusion

{¶ 87} The date of White's offense was January 19, 1996. We have held that R.C. 2929.06(B) could not be applied to a case involving an aggravated

27

murder committed before October 16, 1996, because the General Assembly had not expressly made R.C. 2929.06(B) retroactive. *State v. Williams*, 103 Ohio St.3d 112, 2004-Ohio-4747, 814 N.E.2d 818, syllabus. The new amendment, effective March 23, 2005, applies only to certain offenders sentenced to death for an aggravated murder that was committed on or after October 19, 1981. R.C. 2929.06(E). The class of offenders to whom R.C. 2929.06 applies by its terms are those whose sentence of death was vacated *because of error that occurred in the sentencing phase of the trial*. Because I would hold that the amended statute does not apply to White, I dissent and would hold that he must be sentenced under the version of R.C. 2929.06(B) that was in effect on January 19, 1996, the date of his offense.

PFEIFER, J., concurs in the foregoing opinion.

_____

Ramona Francesconi Rogers, Ashland County Prosecuting Attorney, and Paul T. Lange, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Nathan A. Ray and Randall L. Porter, Assistant Public Defenders, for appellant.

Law Offices of Michael J. Benza and Michael J. Benza, urging reversal for amicus curiae Ohio Association of Criminal Defense Lawyers.

Carrie L. Davis and James L. Hardiman, urging reversal for amicus curiae American Civil Liberties Union of Ohio Foundation.

Ron O'Brien, Franklin County Prosecuting Attorney, and Steven L. Taylor, Chief Counsel, Appellate Division, urging affirmance for amicus curiae Franklin County Prosecuting Attorney Ron O'Brien.

Michael DeWine, Attorney General, Alexandra T. Schimmer, Chief Deputy Solicitor General, and Emily S. Schlesinger, Deputy Solicitor, urging affirmance for amicus curiae Ohio Attorney General.

_____