[Cite as *State v. Riegel*, 2012-Ohio-4517.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO. 14-11-27

      v.

LISA RIEGEL,                         O P I N I O N

      DEFENDANT-APPELLANT.

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                 CASE NO. 14-11-28

      v.

LISA RIEGEL,                         O P I N I O N

      DEFENDANT-APPELLANT.

**Appeals from Marysville Municipal Court**
**Trial Court Nos. CRB 1100619 and CRB 1100624**

**Judgments Affirmed**

**Date of Decision:    October 1, 2012**

Case Nos. 14-11-27 and 14-11-28

**APPEARANCES:**

*Alison G. Boggs* **for Appellant**

*Tim Aslaner and Victoria Stone Moledor* **for Appellee**

**WILLAMOWSKI, J**.

{¶1} Defendant-Appellant, Lisa Riegel ("Riegel"), appeals the judgments of the Marysville Municipal Court finding her guilty in two separate cases for permitting animals (horses) to run at large in violation of R.C. 951.02. On appeal, Riegel contends that the trial court erred in finding her guilty, claiming that the judgment was against the manifest weight of the evidence and the trial court failed to take into account a statutory affirmative defense. Riegel also claims the trial court erred when it failed to find her indigent for the purposes of paying for costs and transcripts on appeal. For the reasons set forth below, the judgment is affirmed.

{¶2} On August 12, 2011, Riegel was cited for permitting at least three of her horses to run at large in violation of R.C. 951.02 (Union County Case No. 11 CRB 619), when they were reported in the middle of a highway. One week later, on August 19, 2011, Riegel was again cited for the same offense when five of her horses were found grazing on a neighbor's property, unconfined and next to the

highway (Union County Case No. 11 CRB 624). Both offenses are fourth-degree misdemeanors.

{¶3} A bench trial was held on November 30, 2011. Joseph Hatfield testified that he came upon three horses in the middle of U.S. 36 in the early morning hours of August 12, 2012, while he was driving to work. (Trial Tr. Vol. II – 7) The roads were wet and it was foggy. (*Id.*) Mr. Hatfield described the horses' appearance and testified that he narrowly avoided hitting them.

> I was going west towards Marysville and there were three horses in the middle of the road and I tried to stop. And I slammed my brakes, but I wasn't going to stop though. I was going to hit them, so I swerved and went in the ditch. And then I came back out of the ditch and went on into work.

(*Id.*)

{¶4} Deputy Kelly Nauman, of the Union County Sheriff's Department testified that he was dispatched to U.S. Route 36 when calls were received that horses were running in the roadway and that "[c]ars were swerving to miss the horses." (*Id.* at 9) Deputy Chad Lee, also from the Union County Sheriff's Department, testified that he joined Deputy Nauman, and located at least five horses standing loose in a neighbor's yard just west of the Riegel residence. (*Id.* at 12-13). Deputy Lee testified that the dispatcher called Riegel, who came out of her house and acknowledged that the horses belonged to her. (*Id.* at 14) The animals then followed the deputy and Riegel back to her property.

{¶5} Edward Kelly testified as to the second offense, stating that on August 19, 2011, he was driving on U.S. 36 towards Marysville around 7:00 p.m. when he noticed horses grazing on the east side of the highway. (Trial Tr. Vol. III – 6)  He realized that the horses were not in a pasture, but were grazing in a neighbor's front yard. (*Id.* at 7)  Mr. Kelly then called the authorities because he lived in the area and he knew that the owners of the property where the horses were grazing did not own horses.  He was concerned because there were no barriers in the yard to prevent the horses from reaching the highway. (*Id.* at 7-8)

{¶6} Deputy Scott Robinson testified that he responded to the dispatch that there were five horses grazing in the front yard of an address.  After he arrived at the location, Riegel came over with hay and oats and coaxed the horses back to their pen next door. (*Id.* at 11)  Deputy Robinson reported that he had a conversation with Riegel as they walked back to her property and that she stated that "the horses can push the fence over when it gets muddy, so the posts aren't in sturdy enough.  So every time it rains or the ground gets wet, they're able to work their way out." (*Id.* at 12)  Deputy Robinson further testified that he observed the enclosure the horses were kept in and agreed that the enclosure was inadequate. (*Id.* at 13)

{¶7} No witnesses testified for the defense.  The trial court found Riegel guilty of both charges.  Prior to sentencing, Riegel's attorney spoke on her behalf

and stated that the majority of the time Riegel keeps the horses in the barn because of the issues of them getting through the fence. The State pointed out the seriousness of the matter, noting that human lives were in jeopardy. Prior to sentencing, Riegel acknowledged that she did not have an adequate fence, and offered to move the horses to a boarding facility if necessary. (*Id.* at 21) The trial court also noted that Riegel has had numerous citations for failure to control her dogs, indicating a pattern of failure to control her animals.

{¶8} The trial court sentenced Riegel to a $250 fine and thirty days in jail for each of the two offenses, with the two sentences to run consecutively. However, the trial court suspended fifteen days of the jail sentence in Case No. 11 CRB 619, and it suspended the fine and the entire jail sentence in Case No. 11-CRB 624. The trial court granted Riegel's subsequent motion to stay execution of sentence pending appeal.

{¶9} It is from this judgment that Riegel now appeals, raising the following two assignments of error for our review. Because the offenses and issues are the same in both cases, these matters are consolidated for appeal.

### First Assignment of Error

**The trial court's decision was against the manifest weight of the evidence and the court failed to take into account there was a statutory affirmative defense.**

**Second Assignment of Error**

**The trial court erred when it overruled Riegel's motion to have the cost of preparing her transcripts paid for by the State, as she had already been determined to be indigent.**

{¶10} In the first assignment of error, Riegel raises several different issues. First, she questions which version of the statute should apply, since both offenses occurred in August 2011, prior to the September 23, 2011 effective date of amended R.C. 951.02. However, Riegel was not sentenced until November 30, 2011, after the effective date of the amended statute. Therefore, Riegel argues that the trial court erred in applying the original statute's "strict liability" standard and in finding her guilty merely because the horses were found running loose.

{¶11} Riegel also claims that the decision was against the manifest weight of the evidence because there was no evidence that the horses were "purposely let out," or that she "permitted or assisted" in allowing the horses to escape and wander off her property. (Appellant's Brief, p. 4) She asserts that the statute must be read in conjunction with R.C. 951.12, and that the trial court erred by not considering the affirmative defense that the escape was an "unavoidable escape" made "without the owner's or keeper's knowledge or fault." R.C. 951.12.

{¶12} Riegel was charged with violating R.C. 951.02, with an effective date of November 3, 1978. In August, when the offenses were committed, that statute stated:

> No person, who is the owner or keeper of horses, mules, cattle, sheep, goats, swine, or geese, shall permit them to run at large in the public road, highway, street, lane, or alley, or upon unenclosed land, or cause such animals to be herded, kept, or detained for the purpose of grazing on premises other than those owned or lawfully occupied by the owner or keeper of such animals.

> The running at large of any such animal in or upon any of the places mentioned in this section is prima-facie evidence that it is running at large in violation of this section.

The punishment for violation of this statute stated that "[w]hoever violates section * * * 951.02 of the Revised Code is guilty of a misdemeanor of the fourth degree." R.C. 951.99 (effective 11-3-78).

{¶13} The General Assembly enacted a new version of the law, which was effective September 23, 2011. The amended version of R.C. 951.02, as modified by House Bill 22 (Session Law No. 2011-36), maintains the first paragraph of the statute as in the previous version (with the exception of the addition of "bison," "llamas," and "alpacas," and two minor grammatical changes), but the second paragraph was deleted in its entirety, revised, and inserted into R.C. 951.10, pertaining to civil responsibility for damages resulting from escaped animals, to become paragraph (B) of that statute.[1] The penalty set forth in R.C. 951.99 that is applicable to this case was also affected by the revision with the addition of the word "recklessly," so that the statute now reads "[w]hoever **recklessly** violates

---

[1]The new Section (B) to the amended R.C. 951.10 states that "[t]he running at large of any animal specified in Section 951.02 of the Revised code in or upon any of the places mentioned in that section is prima-facie evidence in a **civil action** for damages under division (A) of this section that the owner or keeper of the animal negligently permitted the animal to run at large in violation of section 951.02 of the Revised Code."

section 951.02 of the Revised Code is guilty of a misdemeanor of the fourth degree." R.C. 951.99 (effective 9-23-11)

{¶14} R.C. 951.12 was essentially unchanged, with the exception of a few minor modifications as noted below.

> If it is proven that an animal running at large in violation of section 951.02 of the Revised Code escaped from its owner or keeper without **the owner's or keeper's** knowledge or fault, **the** animal shall be returned to its owner or keeper upon payment of the compensation prescribed in section 951.13 of the Revised code for its taking, advertising, and keeping.

{¶15} After a review of the record and applicable law, we find that Riegel's arguments concerning this assignment of error are without merit for the following reasons: (1) the original 1978 version of the statute that was in effect at the time the horses were at large and which version was utilized by the trial court was the applicable version; and, (2) under either version of the statute, there was ample evidence to prove that Riegel was reckless in allowing them to escape, and hence, was not without "fault" under R.C. 951.02 and R.C. 951.12.

{¶16} The trial court applied the 1978 version of the statute in both application of facts and findings, as well as sentencing. R.C. 1.58 specifically addresses the effect of reenactment, amendment or repeal of a statute. It states, in pertinent part:

> A) The reenactment, amendment, or repeal of a statute does not, except as provided in division (B) of this section:

(1) Affect the prior operation of the statute or any prior action taken thereunder;

\* \* \*

(2) Affect any violation thereof or penalty, forfeiture, or punishment incurred in respect thereto, prior to the amendment or repeal;

\* \* \*

(B) If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended.

R.C. 1.58.

{¶17} In this case, there was nothing in the amended statute that would indicate that it would apply retroactively. R.C. 1.48 establishes that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." *State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583, ¶ 27. Therefore, pursuant to R.C. 1.48, and R.C. 1.58(A)(1) and (3), the new, amended statutes were not applicable to Riegel's offenses, which occurred prior to the effective date of the statutes. Section (B) of R.C. 1.58 is not applicable because the penalty for the offense remained a fourth degree misdemeanor under both versions of R.C. 951.99.

{¶18} The Supreme Court of Ohio addressed a situation similar to Riegel's in *State v. Kaplowitz*, 100 Ohio St.3d 205, 2003-Ohio-5602, wherein the defendant

committed the offense before the aggravated vehicular assault statute was amended, but he was sentenced after the amendment became effective. The trial court had erroneously sentenced the defendant under the new, amended law. In its decision, the Supreme Court of Ohio stated:

> Accordingly, we hold that R.C. 1.58(B) does not apply to give a criminal defendant the benefit of a reduced sentence if, by applying it, the court alters the nature of the offense * * *.

*Kaplowitz*, at the syllabus.

{¶19} In Riegel's case, the trial court correctly applied the law in existence at the time of the offense. If the trial court had applied the revised law, it would have operatively altered the nature of the offense because, by moving the second paragraph of R.C. 951.02 to R.C. 951.10, it seems to have intended it to apply to civil matters alone, prospectively.

{¶20} In the second part of this assignment of error, Riegel argues that the decision was against the manifest weight of the evidence because the trial court failed to apply R.C. 951.12 in consideration of the "affirmative defense" that the animals had escaped without the owner's or keeper's knowledge or fault. A challenge to a conviction based on the manifest weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial to support one side of the issue rather than the other." (Emphasis sic.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997–Ohio–52. However, "[t]he burden of

going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused." R.C. 2901.05(A); *State v. Nucklos*, 121 Ohio St.3d 332*, 2009-Ohio-792, ¶ 7.

{¶21} Riegel did not testify or provide any witnesses or evidence to support her claimed affirmative defense. At most, the testimony of the State's witnesses on direct examination or cross-examination may have indicated that Riegel may not have had knowledge that the horses had escaped at the time of the above two incidents. However, there was ample testimony and evidence that indicated that Riegel was aware of the fact that the horse enclosure was not adequate to contain the horses, especially when it rained, and that she was reckless in not rectifying a condition that posed a serious danger to others.

{¶22} We do not find that the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Based on all of the above, the first assignment of error is overruled.

{¶23} In the second assignment of error, Riegel claims that because she was found to be indigent for the purposes of having counsel to represent her, the trial court should have granted her motion to have her transcripts for appeal paid

for at public expense. She also asserts that the application fee for appointed counsel should have been waived.

**{¶24}** The trial court held a hearing on the matter of waiving costs on January 10, 2012, but denied her motions in the two cases. The trial court made the following findings after the hearing: Riegel's income tax records from 2010 showed she had an adjusted gross income of $10,838 from her self-employed "equine riding instruction" business; her two children received over $16,152 per year in Social Security benefits for children with a deceased father; her husband was employed as a roofer (with no evidence of his income provided); she pays no rent at the farm where she and her family live and she keeps her horses; she owns four horses that she testified were worth $2,000; and that contrary to her Schedule C tax form, she paid $400 per month to feed them. The trial court's decision stated:

> Based upon this court's review of the evidence, some of it conflicting in nature, and the absence or lack of testimony about critical information, the court cannot find that the facts warrant a waiver of costs. Further, the court cannot find that the evidence warrants the court paying for the cost of transcribing the record.

(1/20/12 Decision and J.E.)

**{¶25}** Initially, the determination of indigence is the responsibility of the office of the public defender (where applicable), subject to review by the trial court. *State v. Richey*, 10th Dist. No. 08AP-923, 2009-Ohio-2988, ¶10.

> The county public defender shall determine indigency of persons, *subject to review by the court*, in the same manner as provided in section 120.05 of the Revised Code. Each monthly report submitted to the board of county commissioners and the state public defender shall include a certification by the county public defender that all persons provided representation by the county public defender's office during the month covered by the report were indigent under the standards of the Ohio public defender commission.

(Emphasis added.) R.C. 120.15(D)

{¶26} The determination of indigence for purposes of whether a plaintiff should be required to pay filing fees and court costs "is typically granted liberally in order to preserve the due process rights of litigants and guarantee an access to judicial process and representation." *Evans v. Evans*, 10th Dist. Nos. 04AP–816 & 04AP–1208, 2005-Ohio-5090, ¶ 23. "'While courts traditionally waive filing fees and costs for indigent persons in order to promote the interests of justice, it is within the court's discretion whether indigency status is proper in a particular case. The trial judge may consider whether * * * the affidavit of indigency includes sufficient information concerning the litigant's financial condition, whether additional information is required, and whether the affidavit of indigency appears to be reasonable under conditions then existing.'(Citation omitted.)" *Guisinger v. Spier* 166, Ohio App.3d 728, 2006-Ohio-1810, ¶ 6, quoting *Wilson v. Dept. of Rehab. & Corr.*, 138 Ohio App.3d 239, 243 (10th Dist.2000). A trial court always has the discretion to review and evaluate a defendant's affidavit of indigency and determine whether the defendant is truly indigent. *State v. Steward*, 4th Dist. No.

-13-

02CA43, 2003-Ohio-4082, ¶ 40. An abuse of discretion is more than an error of judgment; rather, it connotes that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶27} The trial court held a hearing to review Riegel's indigency status and afforded her the opportunity to address the court and provide current documentation and evidence. The trial court found that there was not sufficient evidence to demonstrate that Riegel could not afford to pay for a transcript and other costs. Based on the record and facts in this case, we do not find that the trial court's decision demonstrated an abuse of discretion. The second assignment of error is overruled.

{¶28} Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.

*Judgments Affirmed*

**SHAW, P.J. and PRESTON, J., concur.**

**/jlr**