[Cite as *State v. Caldwell*, 2014-Ohio-3566.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                          :          APPEAL NO. C-130812
                                                   TRIAL NO. B-1303777
    Plaintiff-Appellee,           :
                                                       *O P I N I O N.*
  vs.                                  :

EDWARD CALDWELL,                        :

    Defendant-Appellant.          :


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal:  August 20, 2014


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,


*Derek W. Gustafson*, for Defendant-Appellant.


Please note:  this case has been removed from the accelerated calendar.

**DEWINE, Judge.**

{¶1}    Ohio recently enacted a law requiring persons convicted of arson to register annually with law enforcement.  The question for this appeal is whether this registration scheme may be applied to offenders who committed their crimes prior to the effective date of the law, without running afoul of the prohibition on retroactive legislation in the Ohio Constitution.  We conclude that the registration requirement is not unconstitutionally retroactive because it does not burden any vested right or finality interest.  We, therefore, affirm the trial court's judgment imposing the registration duties on the defendant in this case.

### I. Ohio's Arson-Offender Registration Scheme

{¶2}    In December 2012, the General Assembly passed legislation establishing a comprehensive registration scheme for the purpose of tracking arson offenders.  *See* 2012 Am.Sub.S.B. No. 70.  The new law went into effect on July 1, 2013.  The enactment requires arson offenders to register annually, in person, with the sheriff of the county in which they reside, and subjects offenders to criminal prosecution for failing to register.

{¶3}    Edward Caldwell pleaded guilty to one count of aggravated arson after setting his couch on fire.  The crime was committed on June 22, 2013, just over a week before the July 1 effective date of the new registration laws.  Mr. Caldwell was convicted on September 24, and sentenced on November 7, 2013, after the registration scheme had taken effect.

{¶4}    Aware of the new registration requirements, counsel for Mr. Caldwell filed a motion in the trial court contending that the scheme was unconstitutional as applied to Mr. Caldwell, because he committed his crime before the effective date of the statutes.  After considering briefs on the issue, the trial court overruled the motion.

{¶5}     Mr. Caldwell appeals, raising two assignments of error.  In the first, he contends that the scheme does not apply retroactively, and if it does, such application violates the Retroactivity Clause of the Ohio Constitution.  In his second assignment of error, Mr. Caldwell claims that the trial court erred by notifying him of his duty to register under the new law because, in his case, the statutes require prison officials to provide the notification.  We address each argument in turn.

## II. The Statutory Provisions Governing Registration

{¶6}     The arson-offender registration scheme is contained in R.C. 2909.13, 2909.14, and 2909.15.  Those sections list the registration requirements and the persons subject to those requirements, provide guidelines for notifying offenders of the duty to register and for maintaining the registry, and impose penalties for the failure to register.

{¶7}     Under the scheme, registration is mandatory for all "arson offenders." R.C. 2909.14(A).  An "arson offender" includes a person who "on or after the effective date" of the statute "is convicted of or pleads guilty to an arson-related offense," as well as any person who is serving a term of imprisonment for an arson-related offense "on the effective date" of the statute.  R.C. 2909.13(B)(1) and (2).  "Arson-related offenses" are arson and aggravated arson, including any attempt, conspiracy, or complicity in committing those crimes.  R.C. 2909.13(A).

{¶8}     If an offender is incarcerated, prison officials are to notify the offender of the registration requirements prior to his release.  R.C. 2909.14(A).  If an offender's sentence does not include any period of confinement, then the statute requires the judge to provide notification at the time of sentencing.  R.C. 2909.14(A)(2).  The person providing notice must also require the offender to sign a form indicating his understanding of the registration requirements.  R.C. 2909.14(B).

{¶9}    Arson offenders must complete their first registration within ten days after being released from a correctional institution or receiving notice at the sentencing hearing.  R.C. 2909.15(A)(1) and (2).  An arson offender must reregister annually with the sheriff of the county in which the offender resides.  R.C. 2909.15(D)(1).  The following information must be provided:  name and any aliases; address; social security number; driver's license or state identification number; the crime of conviction; employer or school attended; license plate number; any distinguishing physical marks; and any other information required by the Attorney General.  R.C. 2909.15(C)(2)(a) through (j).  The offender also must provide finger and palm prints, and allow his photograph to be taken.  R.C. 2909.15(C)(3).

{¶10}    The statutes impose a lifetime registration duty on all arson offenders.  R.C. 2909.15(D)(2)(a).  A limited exception permits the trial court to cut the reporting period to a specified term "not less than ten years"—but only upon the request of both the prosecutor and the investigating law enforcement agency.  R.C. 2909.15(D)(2)(b).

{¶11}    The registry is maintained by the Bureau of Criminal Identification and Investigation.  R.C. 2909.15(E)(2).  The fire marshal's office, state and local law enforcement officers, and certain authorized firefighters are permitted to access the registry.  *Id.*  The registry is not, however, a public record under Ohio's public records law.  *Id.*; *see* R.C. 149.43.

{¶12}    The failure to register is a felony of the fifth degree, and also constitutes a violation of postrelease- and community-control sanctions.  R.C. 2909.15(H).

### III. The Retroactivity Clause of the Ohio Constitution

{¶13}    Article II, Section 28 of the Ohio Constitution, commonly referred to as the Retroactivity Clause, provides:  "The general assembly shall have no power to pass retroactive laws[.]"  Ohio courts have developed a two-tiered framework to address the

4

concerns wrought by retroactive legislation. *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 10. The first is one of statutory construction and is premised on R.C. 1.48, which states: "A statute is presumed to be prospective in its operation unless expressly made retrospective." Because R.C. 1.48 creates a presumption that statutes apply only prospectively, we must first determine whether the legislature expressed a clear intent that a statute apply retroactively. *Id.*, citing *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 106, 522 N.E.2d 489 (1988). If we conclude that the legislature so intended, we proceed to the second tier and consider whether the retroactive application of the statute can survive the constitutional limitation set forth in Ohio's Retroactivity Clause.

{¶14} Our analysis under Ohio's Retroactivity Clause is distinct from that required under the Ex Post Facto Clause of the United States Constitution. *See State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 534; *Walls* at ¶ 23 ("Even though a law may not impair 'vested rights' within the meaning of our retroactivity cases, the law may still run afoul of the ex post facto prohibition"). Ohio's Retroactivity Clause broadly prohibits retroactive legislation impairing substantial rights, while the federal Ex Post Facto Clause applies only to criminal statutes. *See State v. Cook*, 83 Ohio St.3d 404, 410, 700 N.E.2d 570 (1998), citing *California Dept. of Corrections v. Morales*, 514 U.S. 499, 504, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). Four kinds of laws fall within the United States Constitution's prohibition against ex post facto legislation: 1) laws that criminalize conduct that was innocent at the time it occurred; 2) laws that make a crime greater than it was when committed; 3) laws that impose a greater punishment than that which existed at the time the crime was committed; and 4) laws that retroactively alter the rules of evidence to benefit the

state. *White* at ¶ 50, citing *Calder v. Bull*, 3 U.S. 386, 390, 1 L.Ed. 648 (1798); *see* *Stogner v. California*, 539 U.S. 607, 611, 123 S.Ct. 2446, 156 L.Ed.2d 544 (2003).

{¶15}   Mr. Caldwell does not claim that the arson-offender registration requirements violate the Ex Post Facto Clause, so our review here is limited to the constraints imposed upon the General Assembly under the Ohio Constitution.

### A. The arson-offender registration statutes are retroactive

{¶16}   The presumption that the registration statutes apply prospectively may be overcome only upon a " 'clearly expressed legislative intent' " that they apply retroactively. *See Walls* at ¶ 10, citing *Cook* at 410. "[T]he date of offense is the governing date when assessing whether a given statute is retroactive." *Walls* at ¶ 13.

{¶17}   R.C. 2909.13(B) specifies that the registration provisions apply to any "arson offender," which includes:

(1) A person who on or after the effective date of this section is convicted of or pleads guilty to an arson-related offense; [and]

(2) A person who on the effective date of this section has been convicted of or pleaded guilty to an arson-related offense and is * * * serving a prison term * * * or other term of confinement for the offense[.]

{¶18}   Mr. Caldwell contends that the statutes lack clear language of retroactivity and, therefore, may only be applied prospectively. In support of this contention, he relies on *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167. There, the Supreme Court considered whether a statute requiring that certain offenders on supervised release provide a DNA sample applied retroactively to offenders who had been convicted and placed on supervised release before the statute went into effect. The language at issue in that case provided:

> If a person is convicted of or pleads guilty to a felony offense * * * and the person is on probation * * * or under any other type of supervised release * * *, the person shall submit to a DNA specimen collection procedure * * *.

Former R.C. 2901.07(B)(3)(a).

{¶19} The court held that because there were "no plain references to [the statute's] applicability to convictions or guilty pleas occurring before the effective date of the section or to pending actions," the statute could only be applied prospectively. *Consilio* at ¶ 16. In reaching that conclusion, the court explained that the statute was ambiguous as to its application—its terms could be read to apply to individuals already on supervised release as of the effective date of the statute, or to those placed on supervised release on or after that date. *Id.* at ¶ 17. Thus, the court concluded that the legislature had not included in the statute "express language making it retroactive[.]" *Id.* at ¶ 25; *see id.* at paragraph one of the syllabus.

{¶20} In contrast, the statutes in question here are unambiguous. The registration requirements expressly apply to any arson offender who "*on the effective date* * * * is * * * serving a prison term * * * or other term of confinement for the offense[.]" (Emphasis added.) R.C. 2909.13(B)(2). The provisions also apply to any person who "*on or after the effective date* * * * is convicted of or pleads guilty to an arson-related offense[.]" (Emphasis added.) R.C. 2909.13(B)(1). Both scenarios necessarily incorporate criminal conduct occurring prior to the effective date. Because the General Assembly plainly intended for the registration requirements to apply to conduct occurring before the statutes' effective date, we conclude that the statutes are retroactive.

### B. Retroactive application does not violate the Ohio Constitution

### 1. Ohio retroactivity jurisprudence

{¶21}    Having determined that the General Assembly intended for the registration statutes to apply retroactively, we now turn to the question of whether that application is permissible under the Ohio Constitution.  We begin our analysis with the understanding that "statutes enjoy a strong presumption of constitutionality."  *Cook*, 83 Ohio St.3d at 409, 700 N.E.2d 570.  Despite the Ohio Constitution's pronouncement that the General Assembly "shall have no power to pass retroactive laws," the Ohio Supreme Court has concluded that " 'retroactivity itself is not always forbidden by Ohio law.' "  *White*, 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 534, at ¶ 31, quoting *Bielat v. Bielat*, 87 Ohio St.3d 350, 353, 721 N.E.2d 28 (2000).  As the *Bielat* court explained, "Ohio courts have long recognized that there is a crucial distinction between statutes that merely apply retroactively * * * and those that do so in a manner that offends our Constitution."  *Bielat* at 353.  Thus, a "purely remedial statute" does not violate the Ohio Constitution, even when applied retroactively.  *Id.* at 354, citing *Cook* at 410-411.  But a substantive statute—one that " 'impairs vested rights, affects an accrued substantive right, or imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction' "—may not be applied retroactively.  *Bielat* at 354.

{¶22}    The Supreme Court has recognized, however, that not every past occurrence results in a blanket prohibition against future legislation.  Indeed, the following principle frequently has been employed by the Ohio Supreme Court:  " 'a later enactment will not burden or attach a new disability to a past transaction or consideration in the constitutional sense, unless the past transaction or consideration, if it did not create a vested right, created at least a reasonable expectation of finality.' "

8

*State ex rel. Matz v. Brown*, 37 Ohio St.3d 279, 281, 525 N.E.2d 805 (1988); *see Cook* at 412; *Bielat* at 357; *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, ¶ 34. Repeatedly, the court has held that the "commission of a felony" is not a "past transaction" creating a reasonable expectation of finality: " 'Except with regard to constitutional protections against *ex post facto* laws * * *, felons have no reasonable right to expect that their conduct will never thereafter be made the subject of legislation.' " *Cook* at 412, quoting *Matz* at 281-282.

{¶23} The Ohio Supreme Court seemingly departed from this principle that the commission of a felony does not create an expectation of finality in *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108. The *Williams* case dealt with the most recent iteration of the registration scheme for sex offenders, stemming from Ohio's implementation of the federal Adam Walsh Act. The question presented in *Williams* was whether the new statutory requirements were unconstitutionally retroactive. The court had previously upheld the retroactive application of prior versions of the sex-offender registration scheme. *See Cook*, 83 Ohio St.3d at 409, 700 N.E.2d 570; *Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110. Without considering whether the offenders affected by the changes had a vested right or a "reasonable expectation of finality" in their registration status, the *Williams* court concluded that the changes rendered the statutory scheme so punitive that they constituted "new burdens, duties, obligations, or liabilities as to a past transaction[.]" *Williams* at ¶ 19. The court, therefore, held that the provisions were unconstitutional if applied retroactively. *Id.*

{¶24} *Williams* is hard to reconcile with the court's previous pronouncements that the commission of a felony does not create a reasonable expectation of finality. Perhaps it is best understood by saying that, in *Williams*, the court simply found the scheme so punitive that it amounted to a violation of the Ohio Constitution,

9

notwithstanding the court's prior jurisprudence on criminal acts and the expectation of finality.

{¶25}   Since its decision in *Williams*, however, the Ohio Supreme Court has returned to analyzing retroactive legislation under the familiar framework of whether the retroactive application of a new law burdened a vested right or a reasonable expectation of finality. *White*, 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 534. In *White*, the court dealt with a new statute providing that, where an offender's death sentence had been set aside, the trial court must empanel a new jury and conduct a new penalty hearing. The new law replaced the rule articulated in *State v. Penix*, 32 Ohio St.3d 369, 513 N.E.2d 744 (1987), which held that where a sentence had been vacated for a penalty-phase error, the trial court could not empanel a new jury to impose the death penalty, but must instead impose a sentence of life incarceration. *White* at ¶ 5. The defendant in *White* argued that because his crime took place prior to the enactment of the statute, he was entitled to be resentenced under *Penix*.

{¶26}   In analyzing whether the new law was substantive or remedial, the *White* court first considered whether the new law increased the punishment for the offense. *White* at ¶ 32. Noting that the death penalty was available at the time of the defendant's crime and at the time of resentencing, the court held that the new law did not increase the punishment for the underlying offense. *Id.* at ¶ 33.

{¶27}   Next, the court reviewed whether the defendant in *White* had an accrued right to be sentenced under *Penix*. *Id.* at ¶ 34-35. The court explained that an accrued right is one that is "ripe for enforcement" and not "dependent for its existence upon the action or inaction of another[.]" *Id.* at ¶ 35, citing *Black's Law Dictionary* 1436 (9th Ed.2009), and *Hatch v. Tipton*, 131 Ohio St. 364, 368, 2 N.E.2d 875 (1936). Because the defendant's right to be resentenced under *Penix* could not have vested until after his

original sentence was invalidated, well after the new law's enactment, the court found that he "could not plausibly contend that he relied on *Penix* when he committed [the crime]." Thus, the court held that the retroactive application of the new law did not impair any vested right.

{¶28} Finally, the court in *White* considered whether the new law imposed a new burden as to a past transaction. The court reiterated that the Retroactivity Clause forbids the General Assembly from " 'passing new laws to reach back and create new burdens, new duties, new obligations, or new liabilities not existing at the time.' " *White*, 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 534, at ¶ 40, citing *Miller v. Hixson*, 64 Ohio St. 39, 51, 59 N.E.2d 749 (1901). The court concluded that the new law did not impose a new burden because the defendant had the burden of defending against the death penalty even at the time of his first trial. *White* at ¶ 41.

{¶29} But the court went on to explain that even if the new law imposed a new burden, there must be some showing that the burden impacted a past transaction that created some reasonable expectation of finality. *Id.* at ¶ 42, citing *Matz*, 37 Ohio St.3d at 281, 525 N.E.2d 805. The court reaffirmed the principle that " 'the commission of a felony' is not a transaction that creates a reasonable expectation of finality." *Id.* at ¶ 43; *see State v. Davis*, 139 Ohio St.3d 122, 2014-Ohio-1615, 9 N.E.3d 1031, ¶ 52. Thus, the court held that because the defendant could have had no reasonable expectation of finality with respect to being sentenced under *Penix* on the date of his crime, the retroactive application of the new sentencing law "does not create a new burden 'in the constitutional sense.' " *White* at ¶ 44, quoting *Matz* at 281.

## 2. The statutory provisions are not substantive

{¶30} Mr. Caldwell asserts that the arson-offender registration statutes are unconstitutionally retroactive because they impose new burdens and duties that did not

11

exist at the time he committed the underlying crime. We agree that the registration provisions impose new burdens and duties on arson offenders. But, applying the analysis used in *White*, we cannot say that the new burdens are substantive in nature.

{¶31} First, the statutes do not increase the punishment for arson-related offenses. *See White* at ¶ 32-33. Classification as an arson offender "is a collateral consequence of the offender's criminal acts rather than a form of punishment per se." *See Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, at ¶ 34. And the only additional penalty faced by an offender is that triggered by his commission of a new crime—the failure to register. *See Cook*, 83 Ohio St.3d at 421, 700 N.E.2d 570. Nor does Mr. Caldwell claim to have a vested right in not being subject to registration requirements at the time he committed his offense.

{¶32} With regard to the imposition of retroactive burdens, the *White* court confirmed that—except as to the prohibition against ex post facto laws—the commission of an offense does not give felons a " 'reasonable right to expect that their conduct will never thereafter be made the subject of legislation.' " *White*, 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 534, at ¶ 43, quoting *Matz* at 281-282. At the time he committed the crime in question, Mr. Caldwell could have had no reasonable expectation of finality with respect to the absence of any postconviction regulation. Thus, the retroactive application of the registration requirements does not "create a new burden 'in the constitutional sense.' " *White* at ¶ 44, quoting *Matz* at 281.

{¶33} We note that we would reach the same outcome even if we applied the analysis used in *Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, 952 N.E.2d 1108, to determine whether the arson-offender registration provisions are so punitive that they comprise a new burden even as to past felonious conduct. The arson-offender registration statutes do bear similarities to those pertaining to the sex-offender registry.

12

Both the sex-offender and arson-offender registration schemes have been placed within R.C. Title 29—Ohio's criminal code. *See Williams* at ¶ 11. The failure to register under either scheme subjects offenders to criminal prosecution. *See id.* Arson offenders are automatically subject to registration requirements upon conviction for any arson-related offense, "without regard to the circumstances of the crime or [their] likelihood to reoffend." *See id.* at ¶ 16. They are not entitled to a hearing prior to classification, nor is there any opportunity for the court to review the appropriateness of the classification. *See id.* at ¶ 19. Further, arson offenders are automatically subject to a lifetime reporting requirement—with a limited exception that permits the trial court to reduce their reporting requirement to no less than ten years, upon the request of the prosecutor and investigating officer. R.C. 2909.15(D)(2)(b).

{¶34} Nonetheless, the arson-offender registration statutes differ from the sex-offender provisions in significant ways. Sex offenders must register in potentially three different counties—those in which they reside, work, and attend school—and some must register as frequently as 90 days. *Williams* at ¶ 13. In contrast, arson offenders need only register annually in the county in which they reside. The *Williams* court emphasized the stigma that follows from an offender's placement on the public sex-offender registry. *Id.* Conversely, the arson-offender registry is visible only to certain law-enforcement personnel. The sex-offender statutes impose stringent restrictions on where the offender is permitted to reside, whereas arson offenders are not subject to any residential restrictions. *Id.* And while arson-registry violations may subject the offender to later prosecution, we think it notable that the failure to register is a low-level felony that carries a presumption of probation. R.C. 2909.15(H). This is markedly different from the failure of a sex offender to register, which constitutes a felony of the same degree as that of the underlying conviction. *See* R.C. 2950.99. For example, if a sex

offender who committed a first-degree felony sex offense fails to register, that failure to register constitutes another first-degree felony with a potential punishment of up to 11 years in prison. R.C. 2950.99(A)(1)(a) and 2929.14(A)(1). In view of these considerable differences, we cannot say that the arson-offender registration requirements are so punitive that they impose a new burden in the constitutional sense.

{¶35} Registration programs have "long been a valid regulation technique with a remedial purpose." *Cook*, 83 Ohio St.3d at 418, 700 N.E.2d 570. We must uphold the legislation unless we find its provisions to be "clearly incompatible" with the Ohio Constitution. *Id.* at 409. In this case, we do not. Because Mr. Caldwell had no expectation of finality with regard to any duties that may or may not have attached following his conviction, he does not have a substantive right in this regard. *See Cook* at 414. We conclude, then, that the statutory scheme is remedial in nature, and the General Assembly may retroactively impose its provisions without running afoul of the Ohio Constitution.

### IV. Notification in the Trial Court did not Trigger Duty to Report

{¶36} During the sentencing hearing, the trial court notified Mr. Caldwell of his duty to register under the new law. The court acknowledged that, in this case, it was not required to provide notification because Mr. Caldwell had been sentenced to a term of imprisonment. But the court explained that because the registration requirements were so new, it would read the notification "for good measure." Mr. Caldwell asserts that the trial court lacked authority to explain his registration duties to him and that the notification is, therefore, void.

{¶37} R.C. 2909.14(A) provides that arson offenders shall be provided with notice of the duty to register. Where the arson offender is sentenced to a term of imprisonment, a prison official is to notify the offender prior to his release from

confinement, and the offender must register within ten days after his release. R.C. 2909.14(A)(1) and 2909.15(A)(1). If the arson offender is not sentenced to a term of incarceration, however, the duty falls to the trial court to provide the notification at the sentencing hearing, and the offender must register within ten days after the hearing. R.C. 2909.14(A)(2) and 2909.15(A)(2).

{¶38}   Mr. Caldwell contends that because he was sentenced to a prison term, the notification provided by the trial court was improper. Because offenders who receive notification pursuant to R.C. 2909.14(A)(2) must register within ten days of the sentencing hearing, Mr. Caldwell claims that he is in violation of the statute as a result of the trial court's improper notification. Thus, he asks us to declare the notification void.

{¶39}   Mr. Caldwell has not been charged with any violation of his registration duties, so the issue of whether he would be in violation of the statutory requirements is not ripe for our review. We note, however, that R.C. 2909.15(A)(2)—which requires offenders to register within ten days of the sentencing hearing—applies only to those offenders who received notice under R.C. 2909.14(A)(2). And R.C. 2909.14(A)(2) is limited to offenders who were *not* sentenced to a term of incarceration. Neither section applies to Mr. Caldwell because he *did* receive a prison sentence. Thus, we do not think the trial court's decision to read Mr. Caldwell the notification provisions "for good measure" triggered his duty to report. While the trial court was not obligated to provide the notification, and while the court's decision does not discharge prison representatives from their duty to notify Mr. Caldwell of the reporting requirements prior to his release, we see no harm in the court's effort to explain the new statutes.

## V. Conclusion

{¶40}   We conclude that the registration provisions of R.C. Chapter 2909 are remedial in nature, and may be applied retroactively to Mr. Caldwell without violating

the Retroactivity Clause of Article II, Section 28 of the Ohio Constitution. And we find no prejudice in the trial court's decision to notify Mr. Caldwell of his obligations under the statute. We, therefore, overrule the assignments of error and affirm the judgment below.

Judgment affirmed.

**HILDEBRANDT, P.J.,** and **HENDON, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.