[Cite as *State v. Lake*, 2023-Ohio-1619.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

 PLAINTIFF-APPELLEE,     CASE NO. 13-22-15

 v.

TAYLOR J. LAKE,       O P I N I O N

 DEFENDANT-APPELLANT.


Appeal from Seneca County Common Pleas Court
Trial Court No. 21 CR 0222

Judgment Affirmed

Date of Decision: May 15, 2023


APPEARANCES:

 *Brian A. Smith* for Appellant

 *Stephanie J. Kiser* for Appellee

Case No. 13-22-15

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Taylor J. Lake ("Lake"), appeals the October 17, 2022 judgment entry of his conviction and sentence from the Seneca County Common Pleas Court. For the reasons that follow, we affirm.

{¶2} On December 22, 2021, Lake was indicted for failing to reregister annually as an arson offender in violation of R.C. 2909.15(D)(1), (H), a fifth-degree felony.[1] Lake appeared for arraignment on February 28, 2022 and entered a plea of not guilty.

{¶3} A jury trial was held in the trial court on May 4, 2022 wherein the jury found Lake guilty of the charge set forth in the indictment. On October 13, 2022, the trial court sentenced Lake to three years of community control.

{¶4} Lake timely appeals and raises three assignments of error for our review. We will review his first and second assignments of error together followed by his third assignment of error.

### First Assignment of Error

**Because the State's evidence was not legally sufficient to support a conviction, Appellant's conviction for Required Personal Registration as an Arson Offender was not supported by sufficient evidence.**

---

[1] Lake's duty to reregister as an arson offender stems from a felony conviction for arson in Wyandot County Common Pleas Court in case number 15-CR-0134.

-2-

**Second Assignment of Error**

**Because the jury lost its way and created a manifest miscarriage of justice in finding Appellant guilty, Appellant's conviction for Required Personal Registration as an Arson Offender was against the manifest weight of the evidence.**

{¶5} In his first and second assignments of error, Lake argues that his conviction is based upon insufficient evidence and is against the manifest weight of the evidence.

*Standard of Review*

{¶6} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997), *superseded by statute on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Thus, we address each legal concept, individually.

{¶7} "'"[S]ufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *Id*. at 386, quoting Black's Law Dictionary 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Id*. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by constitutional*

*amendment on other grounds*, *Smith* at 89. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 1st Dist. Hamilton No. C-110097, 2011-Ohio-6267, ¶ 25. *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19, citing *Thompkins* at 386; *State v. Williams*, 3d. Dist. Logan No. 8-20-54, 2021-Ohio-1359, ¶ 6, quoting *State v. Croft*, 3d Dist. Auglaize No. 2-15-11, 2016-Ohio-449, ¶ 5.

{¶8} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). But we must give due deference to the fact-finder, because

> [t]he fact-finder * * * occupies a superior position in determining credibility. The fact-finder can hear and see as well as observe the

body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness's reaction to exhibits and the like. Determining credibility from a sterile transcript is a Herculean endeavor. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder.

*Williams*, 2021-Ohio-1359, at ¶ 8, quoting *State v. Dailey*, 3d Dist. Crawford No. 3-07-23, 2008-Ohio-274, ¶ 7, quoting *State v. Thompson*, 127 Ohio App.3d 511, 529 (8th Dist.1998). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Analysis*

**{¶9}** Lake was found guilty by a jury of failing to reregister annually, in person, as an arson offender with the Seneca County Sheriff's Office's registrar under R.C. 2909.15(D)(1). R.C. 2909.15 states, in its relevant part:

(D)(1) *Each arson offender * * * shall reregister annually, in person, with the sheriff of the county in which the offender resides * * * within ten days of the anniversary of the calendar date on which the offender initially registered.* The registrant shall reregister by completing, signing, and returning to the sheriff * * * a copy of the registration form prescribed by the attorney general and described in divisions (C)(1) and (2) of this section, amending any information required

-5-

under division (C) of this section that has changed since the registrant's last registration, and providing any additional registration information required by the attorney general. The sheriff * * * shall obtain a new photograph of the offender annually when the offender reregisters. *Additionally, if the arson offender's * * * most recent * * * reregistration was with a sheriff * * * of a different county, the offender shall provide written notice of the offender's change of residence address to that sheriff * * *.*

* * *

(H)  Whoever fails to * * * reregister as required by this section is guilty of a felony of the fifth degree. * * *.

(Emphasis added.)  R.C. 2909.15(D)(1), (H).

**{¶10}** We address the second portion of Lake's argument regarding whether the State must establish a culpable-mental state to gain a conviction first.  To us, this is an issue of first impression in Ohio as it pertains to the arson-offender registry. Significantly, no Ohio appellate court has held that violations of R.C. 2909.15(D)(1) require any degree of culpability as defined in section 2901.21(F)(3) of the Revised Code.[2]

**{¶11}** In this portion of his argument, Lake asserts that because R.C. 2909.15(D)(1) does not explicitly delineate a culpable-mental state, recklessness is implied, and thus, the State must prove such at trial.  Accordingly, Lake argues that R.C. 2901.21(B) is triggered.  R.C. 2901.21(B) states in its pertinent part:

When the language defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal

---

[2] R.C. 2901.21(F)(3) defines culpability as "purpose, knowledge, recklessness, or negligence, as defined in section 2901.22 of the Revised Code."

liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. The fact that one division of a section plainly indicates a purpose to impose strict liability for an offense defined in that division does not by itself plainly indicate a purpose to impose strict criminal liability for an offense defined in other divisions of the section that do not specify a degree of culpability.

{¶12} Lake contends that since R.C. 2901.21(B) is triggered and because R.C. 2909.15 does not plainly indicate a purpose to impose strict-criminal liability, the prosecutor in the instant case was required to prove the culpable-mental state of recklessness at trial. In support of his position, Lake directs us to R.C. 2901.21(C), which states:

(1)   When language defining an element of an offense that is related to knowledge or intent or to which mens rea could fairly be applied neither specifies culpability nor plainly indicates a purpose to impose strict liability, the element of the offense is established only if a person acts recklessly.

(2)   Division (C)(1) of this section does not apply to offenses defined in Title XLV of the Revised Code.

(3)   Division (C)(1) of this section does not relieve the prosecution of the burden of proving the culpable mental state required by any definition incorporated into the offense.

R.C. 2901.21(C)(1)-(3).

*The Arson-Offender-Registry Scheme*

{¶13} The arson-offender-registration scheme is contained in R.C. 2909.13, R.C. 2909.14, and R.C. 2909.15. Those sections define an arson offender, the registration requirements, provide guidelines for notifying arson offenders of their

duty to register and for maintaining the registry, and impose penalties for an arson offender's failure to register or reregister.

{¶14} Under the scheme, registration is mandatory for *all* "arson offenders". R.C. 2909.14(A). An "arson offender" includes, a person who "on or after the effective date" of the statute "is convicted of or pleads guilty to an arson-related offense," as well as any person who is "serving a prison term, term of imprisonment, or other term of confinement" "in a jail, workhouse, state correctional institution, or other institution" for an arson-related offense "on the effective date" of the statute. R.C. 2909.13(B)(1) and (2). *See also* R.C. 2909.14(A)(2). "Arson-related offense[s]" are arson and aggravated arson, including any attempt, conspiracy, or complicity in committing those crimes. R.C. 2909.13(A)(2).

{¶15} If an offender is incarcerated, the official in charge of the facility is to notify the offender of the registration requirements prior to his release. R.C. 2909.14(A)(1). If an offender's sentence does not include any term of imprisonment or confinement, then the statute requires the judge to provide notification at the time of sentencing. R.C. 2909.14(A)(2). The person providing notice must also require the offender to sign a form indicating an understanding of the registration requirements. R.C. 2909.14(B).

{¶16} Arson offenders must complete their first registration within ten days after being released from a "jail, workhouse, state correctional institution, or other

institution" or upon receiving notice at the sentencing hearing. R.C. 2909.15(A)(1) and (2). Thereafter, an arson offender must reregister annually with the sheriff of the county in which the offender resides. R.C. 2909.15(D)(1). The following information must be provided: name and any aliases; *residence address*; social security number; driver's license or state identification number; the crime of conviction; employer or school or institution attended; license plate number, vehicle identification number, and a vehicle description; any distinguishing physical marks; and any other information required by the Attorney General. (Emphasis added.) R.C. 2909.15(C)(2)(a) through (j). The offender also must provide finger and palm prints, and allow his photograph to be taken. R.C. 2909.15(C)(3).

{¶17} The statutes impose a lifetime registration duty on *all* arson offenders. R.C. 2909.15(D)(2)(a). However, a limited-duty exception exists permitting the trial court to shorten the reporting period to a specified term of "not less than ten years", but only upon the request of *both* the prosecutor and the investigating law enforcement agency. R.C. 2909.15(D)(2)(b).

{¶18} The registry is maintained by the Bureau of Criminal Identification and Investigation. R.C. 2909.15(E)(2). The fire marshal's office, state and local law enforcement officers, and certain authorized firefighters are permitted to access the registry. *Id.* The registry is not, however, a public record under Ohio's public records law. *Id.*; *see* R.C. 149.43.

{¶19} The failure to register or reregister is a felony of the fifth degree, and also constitutes a violation of postrelease- and community-control sanctions, parole, or other type of supervised release. R.C. 2909.15(H).

*Strict-Liability Analysis*

{¶20} We agree with Lake that the language defining the offense set forth in R.C. 2909.15(D)(1) does not specify any degree of culpability. However, we do not find that the State is required to prove the culpable-mental state of recklessness and that R.C. 2909.15(D)(1) does not plainly indicate a purpose to impose strict-criminal liability. Here, it is the act of failing to reregister alone that triggers criminal liability under R.C. 2909.15(D)(1) and punishment under R.C. 2909.15(H). Hence, we conclude that R.C. 2909.15 does not have a scienter requirement (i.e. degree of culpability specified). Consequently, we look to R.C. 2909.15(D)(1) to determine whether it is the General Assembly's intent to impose strict liability.

{¶21} A statute imposes strict liability when the statute clearly shows a legislative intent to do so. *State v. Moody*, 104 Ohio St.3d 244, 2004-Ohio-6395, ¶ 5-18 (analyzing R.C. 2919.24 Contributing to unruliness or delinquency of a child and concluding, "for strict liability to be the mental standard, the statute must plainly indicate a purpose to impose it."). While the words of the statute here ("[e]ach arson offender or out-of-state arson offender shall") do not automatically impose strict liability, other indicia may demonstrate the General Assembly's intent to do so. *See*

*generally State v. Smith*, 1st Dist. Hamilton No. C-130571, 2014-Ohio-4030, ¶ 8-9 (analyzing this issue regarding whether failing to provide notice of an address change under the Megan's Law version of R.C. 2950.05 was a strict-liability offense). These indicia include (1) whether the statute specified a mental state for one element of the crime and omitted it from another, (2) whether the offense was malum prohibitum (i.e., the acts are made unlawful for the good of the public welfare regardless of the person's state of mind), and (3) whether the legislature had taken a "strong stance" against that type of crime. *State v. Clay*, 120 Ohio St.3d 528, 2008-Ohio-6325, ¶ 6-27.

{¶22} Addressing the first consideration, no portion of R.C. 2909.15(D)(1) specifies an element of culpability. Thus, the first consideration provides us with no guidance on the issue of whether the General Assembly intended to define R.C. 2909.15(D)(1), a strict-liability offense. We do note, however, that R.C. 2909.15 is similar, though not identical, to former R.C. 2950.05 (Megan's Law), which has been repealed.[3] Importantly, many of our sister districts (i.e., First, Second, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Appellate Districts) have

---

[3] An arson offender can have a limited duty to reregister for 10 years or a duty to reregister until the offender's death; however, there are no community-notification requirements. *See* R.C. 2909.15(2)(a)-(b). *Compare with* Former R.C. 2950.07(B)(3) and 2950.06(B)(2), Am.Sub.H.B. No. 180 ("H.B. 180"), 146 Ohio Laws, Part II, 2617 and 2613, Former R.C. 2950.06(B)(1) and 2950.07(B)(1), H.B. 180, 146 Ohio Laws, Part II, 2613 and 2616, and Former R.C. 2950.11(A), H.B. 180, 146 Ohio Laws, Part II, 2627. Under Megan's Law, if an offender was classified at the lowest risk level, i.e., as a sexually oriented offender, he or she was required to register annually for a period of ten years with no community notification, and a sexual-predator classification was the highest-risk offender under Megan's Law. Sexual predators were required to register every 90 days for life, with community notification required.

concluded that R.C. 2950.05 imposes strict liability. *See State v. Ramsey*, 12th Dist. Fayette No. CA2022-02-003, 2022-Ohio-3389, ¶ 13, fn. 3 (citations omitted). Further, no appellate district has held that R.C. 2950.05 requires *any* element of culpability. *Id.* Thus, we find this to be persuasive in our strict-liability consideration of R.C. 2909.15(D)(1).

**{¶23}** Regarding the second indicia, we have previously held that "'[g]enerally, strict liability attaches to criminal offenses which are regulatory in nature and which are designed to protect the health, safety, and well-being of the community.'" *State v. Bowersmith*, 3d Dist. Union No. 14-02-02, 2002-Ohio-3386, ¶ 18, quoting *State v. Shaffer*, 114 Ohio App.3d 97, 102-103 (3d Dist.1996), citing *State v. Buehler Food Markets, Inc.*, 50 Ohio App.3d 29, 30 (9th Dist.1989). Significantly, "the arson offender registry 'allows law enforcement officials to remain vigilant about possible recidivism by arson offenders' and, thus, 'objectively serves the remedial purpose of protecting the local community from repeat arson offenders[]'". *State v. Daniel*, 6th Dist. Lucas No. L-21-1104, 2022-Ohio-1348, ¶ 24, *certifying a conflict*, 167 Ohio St.3d 1466, 2022-Ohio-2490[4], quoting *State v. Reed*, 11th Dist. Lake No. 2013-L-130, 2014-Ohio-5463, ¶ 79. That is–the arson-

---

[4] The Supreme Court of Ohio recently certified a conflict between the Sixth Appellate District (in *State v. Daniel*, 6th Dist. Lucas No. L-21-1104, 2022-Ohio-1348) and the Fourth Appellate District (in *State v. Dingus*, 4th Dist. Ross No. 16CA3525, 2017-Ohio-2619) in Supreme Court case number 2022-0603. The certified question before the Supreme Court is "Does R.C. 2909.15(D)(2)(b) unconstitutionally violate the doctrine of separation of powers?" However, the constitutionality of R.C. 2909.15 was not challenged by Lake on appeal, and thus will not be addressed.

offender registry database "provide[s] a tool to law enforcement and protect[s] the public from harm", which is indicative that it is designed to protect the health, safety, and well-being of the community, and hence is *mala prohibita*. *State v. Gaeth*, 6th Dist. Wood No. WD-21-075, 2022-Ohio-2906, ¶ 14.

**{¶24}** Indeed, none of our sister districts have been asked nor have they concluded that the arson-offender-registration law is *mala prohibita*. However, several appellate districts have concluded that the sex-offender-registration laws, which are similar in nature to the arson offender registry, are *mala prohibita*. *See Ramsey* at ¶ 16, citing *State v. Stansell*, 2nd Dist. Montgomery No. 23630, 2010-Ohio-5756, ¶ 20, *State v. Stewart*, 8th Dist. Cuyahoga No. 94863, 2011-Ohio-612, ¶ 17, *Smith*, 2014-Ohio-4030, at ¶ 7, and *State v. Hardy*, 9th Dist. Summit No. 21015, 2002-Ohio-6457, ¶ 17. *See also Daniel*, 2022-Ohio-1348, at ¶ 21, citing *State v. Caldwell*, 1st Dist. Hamilton No. C-130812, 2014-Ohio-3566, ¶ 33-34. In *Ramsey*, the Twelfth District Court of Appeals, concluded that because those laws are *mala prohibitum* that it was indicative that the General Assembly's intended to impose strict-criminal liability for that conduct. *Id.* We find this rationale persuasive and apply it to our analysis of R.C. 2909.15(D)(1) concluding that R.C. 2909.15(D)(1) (like the sex-offender-registration laws) is *mala prohibita*, and thus it is indicative that the General Assembly intended to impose strict-criminal liability for the conduct required by R.C. 2909.15(D)(1).

**{¶25}** Finally, we must consider whether the General Assembly has taken a "strong stance" against these types of crimes–failure to register/reregister crimes. *See Clay*, 120 Ohio St.3d 528, 2008-Ohio-6325, at ¶ 25, quoting *State v. Maxwell*, 95 Ohio St.3d 254, 2002-Ohio-2121, ¶ 30; *see also Bowersmith*, 2002-Ohio-3386, at ¶ 14. For the reasons herein stated above and because of the General Assembly's imposition of a *lifetime registration duty* on *all* arson offenders (even misdemeanor offenders with limited exceptions) it is clear to us that the General Assembly has taken a strong stance against registration/reregistration crimes involving arson. R.C. 2909.15(D)(2)(a)-(b).

**{¶26}** Therefore, we conclude that R.C. 2909.15(D)(1) imposes strict-criminal liability and no degree of culpability is required under R.C. 2909.15(D)(1). Hence, the prosecutor was not required to prove that Lake acted with recklessness. Thus, this portion of Lake's argument is without merit.

**{¶27}** Next, we address the portion of Lake's argument that the prosecutor did not present sufficient evidence to establish that Lake was required to reregister in Seneca County. He asserts that the prosecutor failed to establish a *prima facie* case by failing to establish Lake's residency address. According to Lake, he *hypothetically* could have either resided in another Ohio county or out-of-state, and therefore, the State failed in its burden of proof. We disagree.

-14-

**{¶28}** To gain a conviction in this case, the State is required under R.C. 2909.15(D)(1) to prove: 1) that the arson offender; 2) failed to reregister; 3) annually; 4) in person; 5) *with the sheriff of the county in which he resides*; 6) within 10 days of the anniversary of the calendar date on which he initially registered. (Emphasis added.) *See* R.C. 2909.15(D)(1). Contrary to Lake's argument, the record reveals that the State did establish a *prima facie* case as to the county in which Lake resides. Here, the facts reveal that Lake relocated (from Wyandot County) to Seneca County in 2020. (*See* State's Ex. 3). Then, pursuant to R.C. 2909.15(C)(1), Lake registered in person with the Seneca County Sheriff's Office as an arson offender (on August 28, 2020). When he registered, Lake provided William Cunningham ("Lt. Cunningham"), a lieutenant with the Seneca County Sheriff's Office, his *expected* residence address. (*Id.*). *See also* R.C. 2909.15(C)(2)(b) and (D)(1). In turn, Cunningham gave Lake a copy of his "Notice of Duties to Register as an Arson Offender (ORC 2909.14)", which instructed him to *reregister* in person at the Seneca County Sheriff's Office no later than September 6, 2021. (*See* State's Ex. 3).

**{¶29}** At trial, the State proved that Lake did not reregister *or* provide another sheriff's office with written notice of his change of residence address. *See* R.C. 2909.15(D)(1). Put more plainly, Lake's most recent registration contained

his expected residence address, which establishes the State's *prima facie* case that Lake was required to reregister in Seneca County on or before September 6, 2021.

**{¶30}** When Lake failed to reregister (in Seneca County) by the aforementioned date, Lt. Cunningham received an alert from the arson-registry database informing him that Lake's reregistration was past due. Lt. Cunningham then checked the database to ensure that Lake was not registered as an arson offender in a different Ohio county.[5] After concluding that Lake had not registered elsewhere (in Ohio), Lt. Cunningham attempted to contact Lake by telephone at the number Lake provided. Unable to reach Lake by phone, Lt. Cunningham then sent Lake a warning letter (by ordinary mail) advising him to reregister in person at the Seneca County Sheriff's Office. Here, the State proved that Lake *never* appeared in person at the Seneca County Sheriff's Office to reregister or at any other sheriff's office in Ohio to register anew as an arson offender. Further, the State also proved that no sheriff's office received Lake's notice of a change in his residence address. *See* R.C. 2909.15(D)(1). Thus, this portion of Lake's argument is without merit.

**{¶31}** Next, Lake asserts that it is possible that he relocated to another state where he potentially would not be subject to the registration requirements under R.C. 2909.15. Even if we assume without deciding that R.C. 2909.15(D)(1) would then be inapplicable, there is no evidence in the record that Lake ever maintained

---

[5] Indeed, this arson-registry software and database is specifically configured for Ohio. Significantly, there is no national arson-offender registry Lt. Cunningham could utilize to verify any out-of-state registration.

*any* residence in another state. Moreover and notably, the record specifically contradicts this portion of Lake's argument and supports that Lake was actually found in Wyandot, Hancock, and Lucas Counties (all Counties in Ohio) in September, October, November, and December of 2021 with an identified last known residence address in Seneca County. (*See* State's Ex. 3); (PSI). Consequently, this portion of Lake's argument is without merit.

**{¶32}** Based on the evidence highlighted above, we conclude that a rational trier of fact (the jury) could conclude beyond a reasonable doubt that Lake failed to reregister as an arson offender in Seneca County under the facts presented. Accordingly, Lake's conviction is based on sufficient evidence.

**{¶33}** Accordingly, Lake's first assignment of error is overruled.

**{¶34}** Next, we turn to address Lake's arguments regarding the weight of the evidence. Lake asserts in his manifest-weight-of-the-evidence challenge that Lt. Cunningham lacks credibility because he should have made *reasonable efforts* to contact Lake in addition to his (Cunningham's) search of the arson-registry database and attempts to reach Lake by telephone and ordinary mail. Importantly, the statute places no burden on the sheriff to make *reasonable efforts* to contact the arson offender, which Lake concedes. *See* R.C. 2909.15(D)(1); (Appellant's Brief at 13).

**{¶35}** To us, Lake is attempting to shift the burden under R.C. 2909.15(D)(1) from Lake (the arson-offender) to Lt. Cunningham (the registrar). On the contrary,

-17-

it was Lake's responsibility to reregister by September 6, 2021 in person in Seneca County *or* to register in a different Ohio county *if* his residence address changed as well as provide that registrar with written notice of his change of address. *See* R.C. 2909.15(D)(1).

**{¶36}** Even though Lake's credibility argument appears to test the persuasiveness of the State's evidence, his argument sounds in sufficiency, which we have already addressed. Consequently, we limit our review here to the weight of the evidence.

**{¶37}** Upon the facts presented, we conclude that the evidence we summarized in our sufficiency-of-the-evidence analysis (supporting Lake's conviction) is weightier than the evidence against it, and thus, the evidence does not weigh heavily against Lake's conviction. Therefore, we do not conclude that the jury clearly lost its way, which created such a manifest miscarriage of justice that Lake's conviction must be reversed.

**{¶38}** Accordingly, Lake's second assignment of error is overruled.

### Third Assignment of Error

**Because the trial court's sentence deferred Appellant's remaining jail time to the discretion of Appellant's probation officer, the trial court's sentence was contrary to law and in violation of Appellant's right to Due Process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.**

**{¶39}** In his third assignment of error, Lake argues that the trial court erred by reserving part of his sentence (i.e., 113 days) to be *scheduled* at the sole and absolute discretion of Seneca County Probation Services. Specifically, Lake argues that the trial court vested its authority under R.C. 2929.15(B) to impose a penalty upon Lake to his probation officer, which he argues is contrary to law and violates his due-process rights.

*Standard of Review*

**{¶40}** R.C. 2953.08 provides specific grounds for a defendant to appeal a felony sentence. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 10. Under R.C. 2953.08(G)(2), an appellate court will reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶41}** However, "[a] 'sentencing court has broad discretion to shape community control sanctions provided that the sanctions are constitutionally and statutorily permitted.'" *State v. Anderson*, 143 Ohio St.3d 173, 2015-Ohio-2089, ¶

19, quoting Katz, Lipton, Gianneli, & Crocker, *Baldwin's Ohio Practice*, *Criminal Law*, Section 119:2 (3d Ed.2014).

*Analysis*

{¶42} Importantly, R.C. 2929.15(A)(1) directs the court imposing a felony sentence to utilize one or more community control sanctions authorized under R.C. 2929.16, R.C. 2929.17, and R.C. 2929.18. R.C. 2929.16, R.C. 2929.17, and R.C. 2929.18 each state that the community-control sanctions "include, but are not limited to, the following" and then give examples. One such example relevant to the instant case includes a community residential sanction of "a term of up to six months in jail[]". R.C. 2929.16(A)(2).

{¶43} To us, the sentence of the trial court is clear; Lake must serve 113-days in the county jail as a community residential sanction. *See* R.C. 2929.16(A)(2). Importantly, Lake does not dispute the authority of the trial court to impose 113 days, rather he contends that the trial court erred by conveying its authority to the probation department to impose a jail term. However, we conclude that the trial court did not convey its authority to the probation department, but rather was permitting the probation officer to *schedule* when the jail sentence commences. We conclude that the trial court's sentence is not contrary to law, and that the trial court did not abuse its discretion in permitting the probation department to schedule when the jail sentence begins.

{¶44} Since we have concluded that Lake's sentence is not contrary to law, any argument he asserts regarding due process is rendered moot since it was predicated upon our reaching a contrary conclusion. *See* App.R. 12(A)(1)(c). Therefore, this portion of his argument lacks merit.

{¶45} Accordingly, Lake's third assignment of error is overruled.

{¶46} Having found no error prejudicial to Lake in the particulars assigned and argued, the judgment of the Seneca County Court of Common Pleas, is affirmed.

*Judgment Affirmed*

**MILLER, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**